Early Berrian v. The State.

No. 5796.  Decided April 28, 1920.

1.—Murder—Manslaughter—Statement of Facts—Practice on Appeal.

Where, the Assistant Attorney General moved to strike out the statement of facts because not approved by the trial judge, and it appeared from the record that the trial judge through inadvertence had not signed the same, when in fact he believed he had done so, until his attention was called to the matter, and his omission to do so was an oversight, the statement of facts thus contained in the record will be considered.

2.—Same—Insufficiency of the Evidence.

Where, upon appeal from a conviction of manslaughter, the evidence proved a case of self-defense, the conviction for manslaughter could not be sustained.

Appeal from the District Court of Hill.  Tried below before the Honorable Horton B. Porter.

Appeal from a conviction of manslaughter; penalty: five years imprisonment in the penitentiary.

The opinion states the case.

*J. E. Clarke,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for manslaughter.  The Assistant Attorney General moves to strike out the statement of facts because not approved by the trial judge.  It is made to appear by a statement of the trial judge and affidavit of counsel for appellant that the statement of facts was prepared in ample time and approved by the attorneys, and left with the judge for his official approval.  The trial judge says: "I was sure that I had signed and approved the statement of facts until my attention was called to the matter by appellant's counsel that the same did not have my signature and approval.  It was my intention to sign and formally approve the statement of facts and my failure to place my signature of approval upon the statement of facts was an inadvertence and an oversight.  I was so sure that the statement of facts contained my signature of approval that I stated to counsel for appellant that I had signed and approved the statement of facts shortly after the same was presented to me, and again on the 13th day of this month I assured counsel for appellant that the statement of facts was duly signed and approved by me, and it was my recollection, and is yet my recollection, that I signed the same, but the same not appearing to be signed by me was the result of an inadvertence or oversight."

The question on the motion to strike out the statement of facts be-cause through inadvertence of the judge the statement of facts was not signed, when the judge had in fact in his mind approved said statement of facts as being correct, it occurs to us should not form the basis for the elimination of the evidence. While it is true under the law the statement of facts should be approved by the judge signing the same, yet we are of opinion that where the judge certifies that he in fact thought he had approved and intended to approve, and be-lieved he had approved, the statement of facts until his attention was called to the matter, and his omission to do so was an oversight, it would be rather technical to deprive a party of a statement of facts under such circumstances. If the judge believed he had approved the statement of facts and signed it and filed it with the clerk with that impression, we think this would be a sufficient showing to meet the motion to strike out the statement of facts and authorize, if not require, this court to consider it. This would not come within the rule that would require a reversal for want of a statement of facts where it arose from no fault on the part of defendant in not giving the matter proper attention. We, therefore, are of the opinion that the statement of facts as presented should be considered.

This is the second appeal, the former appeal being reported in 85 Texas Crim. Rep., 367, 212 S. W. Rep., 509. There is quite a lot of testimony introduced the substance of which is that appellant was a tenant of deceased and living in a house within one hundred to one-hundred and fifty yards of the house occupied by deceased. On Tues-day before the homicide on Thursday the deceased complained that appellant was not chopping cotton with sufficient rapidity, and told him that if he could not improve his speed in such work he wanted him to leave the place. Appellant informed him that he was doing the best he could, and doing the work with as much rapidity as was possible for him to do, and that he could not do any better and would leave. His wife was chopping cotton with him at the time. They finished the row they were working on and went away from the place. His wife spent the night at another negro's. He and the negro spent the night at appellant's house. They left early Wednesday morning, and Thursday morning went back with a wagon to move his things to a place he had secured. While in the house rolling up the bedding and getting things ready to place in the wagon, deceased came into the room where he and the other negro were attending to these matters. An altercation came up. During a previous conversation deceased told the appellant they would have a settlement, and that he would buy the crop and garden for what he owed him and give him fifty cents in addition. This was satisfactory to appellant, and with that understanding he went to the house for the purpose of moving his household effects. When deceased came in the room the testimony is to the effect that he asked appellant if he was ready to pay him what he owed him, and appellant told him he did not owe him any-

thing. Deceased pulled his pistol and told both negroes to hold their hands up, that he intended to kill them. The other negro whose name was Bracken was standing almost or nearly between deceased and appellant. He moved when deceased presented his pistol. Deceased shot appellant in the thigh with a 22-Automatic pistol. Appellant reached under the mattress where he kept his pistol, jerked it out and fired striking deceased. He fired from a position on the floor to which he had fallen when shot. This shot took effect in the head of deceased and killed him. The physical facts indicate appellant was in the position shown by his testimony and that of Bracken who was with him. The ball struck deceased in the forehead. went through, and struck the wall above the door, and was found on the floor. The pistol of deceased was found on the floor and also near a piece of furniture or under the edge of a piece of furniture, and a shell ejected from the pistol found on the bed at which deceased was standing. There is no question of the fact that appellant was shot. All of the witnesses who saw and examined him so testified, giving an accurate description of the wound, its entrance and exit. The wife of deceased stated that she heard a pistol shot; that she was plowing in the crop of deceased, her husband, and when she heard the shot went to the house where the shot was fired and found her husband lying upon the floor; that she went from there to her residence, which was some hundred yards or more, and found the pistol of deceased in that house on the mantelpiece and took it down in the field and gave it to one man who gave it to another, and that this second man took the pistol to the house where the shooting occurred and laid it on the floor where it was found. This is the State's version of how deceased's pistol reached the place where found. Appellant and the witness Bracken testified that deceased had the pistol in his hand at the time, and the physical facts show that appellant was shot with a pistol, and that the shell ejected from the pistol was found upon the bed at the foot of which deceased was standing at the time of the shooting. The details of this testimony we deem unnecessary to state. The witnesses went into it with a great deal of circumstantiality as to these physicial facts, but through the entire testimony these physical facts are manifest as shown by all the witnesses.

The contention is made that this testimony does not justify a conviction. We are inclined to take this view of the testimony, and believing the evidence is not sufficient to justify the verdict we are of opinion this judgment should be reversed and the cause remanded, and it is accordinglly so ordered.

*Reversed and remanded.*