## JOHN McDANIEL v. THE STATE.

No. 14262.   Delivered June 3, 1931.
Rehearing Denied October 21, 1931.

The opinion states the case.

*Adams & McAlister,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for a period of two years.

The appellant shot and killed Elbert Johnson. The following in substance comes from the statement of the appellant, who testified in his own behalf: Upon returning to his home after a short absence, he was informed by his wife that Elbert Johnson had entered the appellant's home while in a naked condition. When the appellant's wife informed him of the occurrence, she was quite agitated and disturbed. He went to Johnson and had a conversation with him. From the appellant's report of the conversation the following quotation is taken: "My wife said you broke in on her while I was gone, and what caused you to do that? He said, 'That's a lie; I didn't do it.' I said, 'She swears that you were buck

naked, and that you pulled your clothes off so she wouldn't know you. I don't want you to tell me; I want you to come back here and see what she says.' And he says, 'It's a lie; I didn't do it.' I said, 'She swears it was you, and I want you to come up there and see what she says.' Then he went up to the house and my wife came out and she says, 'That is the man that came in on her the other night;' and it just went all over me and got me crazy and got me so mad I went in the room and got my gun and shot him. I was just crazy and didn't know what to do; it tore me all to pieces. I don't know how many times I shot him; to tell you the truth, I couldn't tell; I was tore all to pieces and went to shooting my pistol."

Appellant further stated that his wife was crying: that she was very much agitated; and that she immediately recognized the deceased as the intruder. Appellant further testified:

"When I shot him, I shot him because I believed, at the time I shot him, what my wife said about him. I actually believed it to my heart."

The testimony of the wife of the deceased is in substance as follows: The two families used water from the same well. Deceased and the appellant met at the well. After a conversation which she did not hear, they went to the home of the appellant, which was nearby. The son of the deceased followed them. She heard a gun fire and saw her husband running. She heard him holler, "Don't shoot." The appellant fired two more shots. The deceased was dead when the witness reached him. He was unarmed.

Elmer Johnson, son of the deceased, testified that he heard the conversation between appellant and deceased; that appellant told deceased to accompany him and deceased said, "All right." When the appellant reached his home he carried a bucket of water into the house and came out with his gun. Both deceased and appellant were upon the porch. Appellant shot the deceased three times. The deceased did nothing. He ran and hollered after the first shot. The witness heard the appellant's wife say, "That is the man that had been in her house one night when she was left alone." He did not hear her say that the man was naked. The deceased denied his identity as the person who had entered the appellant's home.

The wife of the appellant was not a witness in the trial.

The complaint of the refusal of the court to compel state's counsel to make the opening statement, as permitted by subdivision 3, of article 642, C. C. P., as presented, was not error. Disregard of the provisions of the statute, in the absence of a showing of injury, is not regarded reversible error. See Herndon v. State, 82 Texas Crim. Rep., 232, 198 S. W., 788; Brown v. State, 87 Texas Crim. Rep., 261, 222 S. W., 252; Wray v. State, 89 Texas Crim. Rep., 632, 232 S. W., 808. The bill is

accompanied by nothing showing an abuse of discretion in overruling the motion to compel state's counsel to make the statement.

The relevancy of the testimony of the wife of the deceased that in so far as she knew, her husband was not in the habit of visiting the home of the appellant is not perceived, though it is not error.

The subject of the general reputation of the deceased as a peaceable and quiet individual was introduced by the appellant. His complaint of the state's testimony on the subject is untenable.

Several bills of exception deal with the testimony showing declarations of the wife of the deceased. If we comprehend the facts revealed by the evidence, the appellant and the deceased were negroes. They were tenants on the farm of Lem Satterwhite and wife. The dwelling-place of the appellant and that of the deceased were close together. That of Satterwhite was not far distant. The homicide took place on Sunday evening. Early in the week ending upon that day, the appellant had left his home, returning on Saturday night.

On behalf of the appellant, his sister-in-law, Elsie Anderson, testified that on Friday preceding the homicide, she was informed by Melissa McDaniel, (wife of the appellant), that "somebody come in there naked in her house." Before the time that Elsie Anderson testified, the state called Lem Satterwhite, who testified that Melissa McDaniel had reported to the witness and his wife that "somebody came in her house one night." However, the witness, on direct examination, made no further statement upon the subject. On cross-examination, Satterwhite testified to the good reputation for peace and quietude of both the appellant and the deceased.

Mrs. Lem Satterwhite, introduced on behalf of the state, testified that on Friday the wife of the appellant reported to the witness "about somebody being there in her house one night." She further testified that on the Sunday morning following, the appellant, John McDaniel, and his wife, Melissa, came to the house of the witness and a conversation took place. The witness said: "I will state that Sunday morning she and John came down there. You want to know what Melissa said? John was there and heard the conversation. Melissa said at that time she did not know who it was; that he was either a small man or a boy; that he did not have any clothes on; that if he had had any clothes on, she would have known them; if he had had a hat she could have told what kind of a hat; * * * but that she did not have any way of knowing who it was. * * * John first said that he heard there had been a little trouble since he left, and I told him just what I said. He did not discuss very much, except that he watched Melissa mighty close, when she said what she did. What he said was in answer to something that I said, because Melissa had said the man did not havve any clothes on, and she did not know who it was, and would have known if he had had on

clothes, but that she did not know. John said then that from the way Melissa said he came in, it did not seem he came in to get something to eat."

On cross-examination the witness said: "John paid strict attention to what she said. * * * He did not seem to be in any way excited at what was said."

In Bill of Exception No. 4 complaint is made of the testimony of Mrs. Satterwhite, quoted in substance above, which took place on Sunday morning before the homicide, in the presence of the appellant and his wife. It appears from the record that the conversation to which the bill relates occurred on Sunday morning before the homicide on the same evening. It is thought that the bill shows no error as the conversation described took place before the homicide in the presence of the appellant and his wife, and that both of them took part in it.

Bill No. 5, was also approved without objection. So far as it is understood, it is in substance like Bill No. 4, and deals with the same matter.

Bill No. 6, as prepared by the appellant, was refused by the trial court and in lieu thereof the judge prepared his own bill. In the bill prepared by the appellant an effort was made to predicate error upon the proof of the declaration of the appellant's wife made to Mrs. Satterwhite on Friday morning, to which reference is made above. In the bill prepared by the court it is made to appear that the conversation mentioned was repeated by Mrs. Satterwhite on Sunday morning in the presence of the appellant and Melissa McDaniel, his wife. The substance of the bill, as prepared by the court, is set forth in the statement of facts which is quoted above, to which statement of facts the judge refers in connection with the bill prepared by him. It is apparent from the bill that Melissa McDaniel made the statement to Mrs. Satterwhite on Friday morning, and that on Sunday morning the appellant and his wife came to Mrs. Satterwhite, the appellant seeking to know what his wife had told Mrs. Satterwhite on the previous Friday; that in response to his inquiry, in a conversation in which the appellant and his wife both took part, Mrs. Satterwhite related what she had heard Melissa McDaniel say on the preceding Friday. It appears from the bill that on Sunday morning before the homicide, Mrs. Satterwhite informed the appellant of the declarations made by his wife on Friday, and that the information thus conveyed to him was in the presence of his wife and in a conversation in which both of them took part. The appellant defends on information which is claimed to have come from her identifying the deceased as the person who entered her home. It is conceived that knowledge brought to him before the homicide touching her previous declarations inconsistent with those which he claims she made to him, was rele-

vant on the issue of motive, and that the manner in which her previous declarations were given to him was violative of no rule of evidence.

In view of the verdict, the exceptions to the charge are not discussed.

The issue of suspended sentence was submitted to the jury. In their verdict they made no disposition of that subject. The verdict found the appellant guilty and assessed his penalty at two years' confinement in the penitentiary.

We fail to perceive any evidence that would require a charge on the law of self-defense. In fact, we perceive no evidence which would justify the jury in acquitting the accused.

Finding no error justifying a reversal, the judgment is affirmed.

*Affirmed.*

#### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have again examined the testimony for the defense and confess ourselves unable to find anything calling for a charge on self-defense.

Complaint is again made of the testimony of Mrs. Satterwhite relative to what appellant's wife,—on the morning before the killing that evening and in appellant's presence,—said as to a man coming naked to her house not long before the killing. Without going into detail or extended discussion of the admissibility or relevancy vel non of this testimony, it seems enough to say that there is no such difference between what appellant testified that his wife told him prior to the killing and which he claimed led up to same, and what Mrs. Satterwhite testified appellant's wife said in her presence Sunday morning,—as could possibly have affected the verdict in this case. Appellant's testimony that what his wife told him tore him all to pieces and so disturbed him as that he did not know what he was doing when he shot deceased, must have been accpteed as true by the jury, for they gave him the lowest penalty for murder. As far as we are able to determine, it appears immaterial as to whether his wife told the exact facts to appellant, as testified to by him, or with some difference, as testified to by Mrs. Satterwhite. No injury being apparently possible, the motion for rehearing will be overruled.

*Overruled.*

