# Monroe Graham v. The State.

No. 15556.   Delivered October 11, 1933.
Rehearing Denied March 14, 1934.
Reported in 69 S. W. (2d) 73.

The opinion states the case.

*J. D. Pickett,* of Palestine, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, two years in the penitentiary.

There is much conflicting and confusing testimony in the record and many supposed errors which are complained of in 43 bills of exception. The assault claimed by the state to have caused the death of deceased, was made at a little store run by deceased, and was committed in the nighttime, there being no persons present except state witness Hogg, appellant, Howard Graham, appellent's brother, and deceased. According to Hogg, the two Grahams and he went down to the store for the announced purpose on the part of appellant of getting some tobacco. Deceased slept in a bed on the porch. Howard Graham and Hogg stopped out in front. Appellant went and woke deceased up and the two went into the store where deceased lit a lamp. Presently the lamp was put out and deceased came out on the porch. Hogg testified that he heard appellant say he did not give a damn, and heard a lick struck. Appellant came presently to where

witness and Howard were and said "I did." The question was asked him what he did, and appellant replied "Get some tobacco." Witness Hogg said at this Howard Graham laughed, and he asked Howard what made him laugh, and he said he got his tickle box turned over. The three returned to the home of Mrs. Jettie Brown where a party was in progress, and from which place they had gone to the store of deceased. Hogg testified that about an hour after they returned to this place Howard Graham informed him that he and appellant were going back to Smith's and wanted him to go with them. He said he declined to go, and the others left together. When they returned together he said he saw them coming from the direction of Smith's, and when they came up he asked Howard how Smith was and Howard told him that they put him on the bed. Smith was discovered later in the night on the bed in an unconscious condition. A bruised place was behind his ear. There was blood in various places. Deceased died the next day. The attending physician testified that the symptoms indicated concussion of the brain resulting from a blow.

The facts further show that there was an all night party on Saturday night at the home of Mrs. Jettie Brown. Most of the witnesses said they either left said place about or a little after day. That there was considerable drinking of whisky and intoxicating liquor during the night at said place, was testified to by both defense and state witnesses. Defense witness Brown swore that he and appellant were drinking at about the same time; that the whisky was in a quart jar which was not quite full. About this time he said appellant and others left to go to the store of deceased. Again at about one o'clock Brown said he and appellant were drinking of other whisky. This witness said he came away from Mrs. Brown's about daybreak and went out in the field and went to sleep,—not particularly to get sober but because he had been drinking heavily and was sleepy. Other witnesses swore to having whisky and drinking it, both men and women, at the well and at the mail box near Mrs. Brown's place.

We will discuss the bills of exception in inverse order. While the case was being argued by private prosecution, as set out in bill of exception 43, the statement was made, in substance, that while deceased was peacefully sleeping appellant and the other people at the party were having an all-night party and were drinking whisky. The argument is set out in the bill at some length and embraced much of what was clearly proper, and the part objected to seems amply supported by facts in evidence as stated above. There was no question but that the party was an

all-night party, and that there was much drinking indulged in.

The argument set out in bill of exception 42, while presenting the belief of the state's attorney that appellant should be convicted, does not support the inference that such belief rested on anything other than the testimony. It appears, however, that the court told the jury not to consider said argument.

Dr. Lunsford swore that from his examination of deceased and his experience as a physician, he would say that the condition found indicated concussion of the brain. This testimony being before the jury, there was no error in allowing Dr. Speegle to testify that a blow on the head such as would cause a fracture or concussion behind the ear could cause rupture of a blood vessel in the brain. We think the same holding applies to other questions to and answers by Dr. Speegle as appear in bills of exception 39 and 40.

Bills of exception 36, 37 and 38 set out objections to statements of three defense witnesses,—made by them during the sitting of a court of inquiry before which each of said parties appeared and was sworn and gave testimony the substance of which was introduced over objection. The state offered these statements so made as being at variance with the testimony of each of said witnesses as given on this trial. The fact that said statements were not made, or claimed to have been made, in the presence of appellant, would not in the least affect their admissibility for the purpose intended, viz.: the impeachment of said parties by proving statements at other times and places contradictory of their testimony as given in this case. Nor would their admissibility depend on whether they were signed by the several parties, there being proof aliunde that they made such statements before said court of inquiry.

Bill of exception 34 sets out appellant's objection to certain cross-examination of Howard Graham, appellant's brother, who claimed to have been present at the time witness Hogg said that appellant made the assault which resulted in the death of deceased. It appears that on cross-examination of said witness he was asked if he first took a drink of whisky somewhere around nine o'clock that night, to which appellant objected for various reasons set out in the bill. Looking to the statement of facts we note that on his direct examination, and before being asked the question deemed objectionable by appellant on cross-examination,—witness testified "Yes sir, I was drinking that night. I did not drink until I became intoxicated, until early the next morning. Yes sir, when I left the party I was somewhat intoxicated. Yes sir, I stopped and slept it off before I got home." It hardly seems necessary to say that

after having given such testimony on direct examination, the state's cross-examination was entirely permissible. The same ruling is made as to similar complaints in bill of exception 32.

We think no error appears in bills of exception 29, 30 and 31, which reflect the state's effort to discredit defense witness Howard Graham by asking him in slightly different ways as to his having been charged with or arrested for theft, and having been told by deceased to stay away from his place of business.

Manifestly what deceased had told the mother of appellant, some time prior to his death, and what she said to Howard Graham in consequence, would be subject to the objection of the state, as shown in bill of exception 28. The questions asked Roy Graham, as appears in bill of exception 27, if he could smell liquor on Howard, and also on appellant,—not only are insufficient in themselves to manifest error, in that they relate to no time or place or surrounding circumstance,—but same seem to have been answered in the negative.

Bill of exception 26 sets out that over objection Roy Graham testified on cross-examination that he supposed Howard Graham was drinking the night of the alleged assault. The objection was not to the answer as being a supposition. There is nothing in the complaint. Howard Graham while a witness for the defense swore on direct examination that he was drinking that night. The principle involved has many times been decided adversely to appellant, it being uniformly held that where testimony is before the jury without objection, similar testimony admitted over objection would not afford ground for reversal. Wagner v. State, 53 Texas Crim. Rep., 306; Nichols v. State, 91 Texas Crim. Rep., 277.

Bill of exception 25 brings forward complaint that Schitoskey, a sixteen year old boy, first cousin of appellant, and witness for him, among other things, testified over objection that he drank whisky three times on the night of the alleged assault. The testimony was admissible. In Lewis v. State, 33 Texas Crim. Rep., 618, Judge Davidson said: "The prosecution elicited from appellant, on cross-examination, the fact that he was drinking at the time he disturbed the congregation assembled for religious worship. We are unable to appreciate the force of the objections urged to the admission of this testimony. It threw light upon his mental condition, tended to affect the weight of his testimony, and was the proper subject-matter of legitimate inquiry."

Judge Ramsey, in Green v. State, 53 Texas Crim. Rep., 490, affirms the same rule. See, also, Wallace v. State, 65 Texas Crim. Rep., 657, opinion by Judge Davidson; Ables v. State,

106 Texas Crim. Rep., 173; McCarty v. State, 107 Texas Crim. Rep., 589; Roberts v. State, 35 S. W. (2d) 175. What we have here said applies to bills of exception 19, 22 and 33.

Bill of exception 24 complains that the state was permitted to elicit from defense witness Schitoskey that Ruth McKinzie, a guest at Mrs. Brown's party, drank some whisky on the night of the alleged assault. The objection was that the fact that witness' female associate took a drink of whisky would inflame the minds of the jury and would prejudice the accused. It is not set up in the bill that either the witness or the accused had anything to do with the woman drinking whisky, and the inference drawn of injury seems too remote. However, we note that in another part of the testimony the witness said that he and a party, whose members he named, among them being Ruth McKinzie, went to a mail box and all of them drank whisky save Mrs. Artis McKinzie. This testimony being before the jury without objection, we think, would obviously remove any possible harm from the question complained of and under discussion, and the rule discussed in regard to bill of exception 26, supra, would apply.

Appellant has several bills complaining because the state, upon cross-examination of certain witnesses, elicited from them that at different times during the night of the alleged assault appellant was drinking whisky. Also that Oran Hogg was allowed, over objection, to testify that appellant began drinking whisky about eight-thirty P. M., and that the last drink witness knew of his taking that night was just before day. Witness Hogg had testified, apparently without objection, that appellant was drinking on said night. The fact that this witness was asked about appellant drinking at a specific hour, and was permitted over objection to state that appellant was drinking at that specific hour, this being before the assault was committed, would seem admissible as affecting the mental and emotional status and attitude of appellant. We think further it would not be objectionable to ask him in reference to appellant drinking at eight-thirty, the witness having testified without objection that appellant "was drinking that night." Appellant cites no authorities holding to the contrary. The fact that appellant drank that night being thus before the jury, we observe no support for the inference asserted in appellant's bills and in his brief, viz: that testimony that he drank after the alleged assault would prejudice the minds of the jurors against him.

We fail to see the relevance of testimony offered by appellant and rejected, that his brother Howard had money in a bank; or that some two months prior to the alleged assault ap-

pellant had an interest of one-seventh in a joint account of $700.00 in such bank. The state made no effort to show as motive that appellant before the homicide was without money, or to identify the money found in appellant's pocket upon his arrest, as that of deceased. Appellant was permitted to prove by his witnesses, as accounting for money found in his pocket when arrested, that he had drawn out of a bank $75.00 or $100.00 prior to the assault and was carrying it in his pocket at the time.

We see nothing of serious import in any of the bills complaining of questions answered negatively by witnesses, nor do we see any necessity for discussing them or setting them out at length.

State witness Hogg testified to being present and seeing the assault made; that it was made in the nighttime; that he was uncertain whether same was made with brass knucks, but was inclined to the view that it was. He detailed statements made on the way to the place by Howard Graham indicating his ill-feeling toward deceased. We see no error in allowing witness to testify that on the way to the store of deceased he saw Howard with a pair of brass knucks. From the statement of facts it appears that the defense first drew out of said Hogg the fact that on their way to the store of deceased Howard Graham tried to hit him with a pair of brass knucks.

Bills 12 and 13 set out appellant's attempt to reflect upon Dr. Lunsford, state witness, by offering testimony that his place of business had been raided; also that Dr. Lunsford had been arrested for vagrancy. The state's objections were properly sustained.

It is impossible to appraise bill of exception 11, which merely shows that the defense objected to testimony as to the kind of shoes worn by Howard Graham when arrested, and that the objection was overruled, and that the officer "stated the kind of shoes Howard then had on." What the officer stated, or its relevance, or otherwise, is not made to appear. This statement applies also to bill of exception 10 taken to the refusal of the court to allow appellant to prove that a brother of witness Hogg had been indicted and tried for assault to murder. The brother of Hogg thus referred to is not shown to have had any sort of connection with the case at bar.

If bills of exceptions 8 and 9 are correct, they show that the state asked,—in one instance when the witness Hogg *knew* of appellant taking his last drink that night,—and in the other when he last *saw* appellant take a drink that night. In each bill it is stated that before appellant had time to object, witness

said "A little after day break," and that appellant then moved to strike out the question and answer, which was refused. The bills set out no surrounding facts, and we are unable to say that either shows error.

According to witness Hogg, after the assault he, appellant and Howard Graham went back to Mrs. Brown's where the party was in progress. He testified that about two hours later appellant and Howard left the party. Before leaving Howard asked witness to go with him down to the place of deceased, but witness declined to go, and Howard and appellant went away together going southeast. About an hour later they returned. Witness saw them at the fence coming from the direction of Smith's place, and asked Howard, in appellant's presence, how Mr. Smith was, and Howard replied that they had put him on the bed. Appellant reserved what may be termed a "blanket" bill of exception setting forth that he objected to all the testimony set out in said bill. We quote the testimony objected to, from bill of exception 6, as follows:

"That about an hour after defendant and Howard Graham had left to go down to Mr. Smith's the witness saw the defendant and Howard Graham at the yard fence in front of Mrs. Jettie Brown's; that they were coming down the road from Mr. Smith's place; that he asked Howard Graham how was Mr. Smith and Howard Graham said they had put him on the bed." Plainly there could be no question as to the admissibility of most of this quoted testimony, and for this reason the bill is without merit. Appellant's discussion of the bill in his brief is as though he was only objecting to the purported statement of Howard Graham that "They had put him on the bed." This statement was made in the presence of appellant who made no denial. The circumstances justified the trial court in concluding, as was said by Judge Hawkins in Powell v. State, 99 Texas Crim. Rep., 284, that from the "proximity of the parties," the testimony was admissible as in the nature of a confession inferable from silence. If appellant so desired he might have had the issue as to whether he did in fact hear what Howard said, submitted to the jury under an instruction not to consider same if he did not hear it. This would have been proper practice as is suggested in Rhea v. State, 148 S. W., 578. No such request was made and the bill reflects no error. What we have just said applies also to bill of exception 5.

Bills of exception 3 and 4 present objections to the following testimony: "That while said witness and Howard Graham and the defendant were on their way to purchase smoking tobacco at the Jasper Smith store on the night that Jasper Smith was

alleged to have been assaulted by the defendant, and before the alleged assault had taken place, that Howard Graham called Jasper Smith a liar several times and said he was mad at him because Mr. Smith had accused him of stealing some money."

The stated objections were that it was not shown that appellant heard these statements, or assented to them, or endorsed them, or that a conspiracy existed between appellant and his brother to injure deceased. Examining the record we note that Hogg testified that just before these statements were made and while going to Smith's store, all three,—appellant, Howard and himself,—"went along right side by side"; that he talked to both of them on the way; that Howard called Smith a liar several times; said he could whip him; that Smith had accused him of stealing money. He testified that appellant was within four feet of Howard when these statements were made. On the conspiracy proposition, it appears that Howard remained near the front while appellant woke deceased, went in the store, and after the two of them came back on the porch, where appellant struck deceased. Howard left when appellant said he got his tobacco, accompanied appellant away, and later went back with appellant to where the assault had been committed. We see no error in the admission of the testimony. Appellant cites no authorities in support of his objection.

Witness Hogg was asked on direct examination "Where did you and Monroe go" and answered "To get some whisky." This answer was objected to as not responsive. The objection was sustained and the jury told not to consider the answer. The answer was erroneous, but not sufficient to cause reversal. This appears in bill of exception 2.

Bill of exception 1 seems based on a misapprehension. It complains of the refusal of the court to grant a motion made by appellant, which is set out in extenso. The qualification to bill of exception 1 contains the statement of the court that he did sustain the motion made by appellant, and did instruct the prosecuting attorneys in accordance with appellant's request.

Some of the bills of exception, whose failure to manifest error was apparent, we have not discussed. There were a number of complaints made in the motion for new trial, all of which have been considered. We have examined them and are of opinion and believe them without merit and that a discussion of them would but lengthen this already too long opinion. We think the trial court was within his discretion in declining to grant the motion for new trial.

Finding no error in the case sufficient to call for a reversal, the judgment will be affirmed.                    *Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In Bill of Exception No. 1 it is shown that the court instructed counsel for the state to refrain from making reference to the previous conviction of the appellant for the possession or transportation of intoxicating liquor.

From Bill No. 2 it appears that the witness Hogg was asked by the district attorney the following question: "Where did you and Monroe go?" The witness replied: 'To get some whisky." Objection to the answer because not responsive was sustained by the court and the statement of the witness was withdrawn from the jury.

Bill No. 7 shows that over the objection of the appellant evidence was adduced from the state's witness Hogg as follows: "That the defendant began drinking about 8:30 P. M. on the night that the deceased was alleged to have been assaulted."

According to Bill No. 8 the witness Hogg was asked the following question: "About what time was the last time that you knew of his (the defendant) taking a drink?"

The witness replied: "Just a little before the break of day." The same subject is covered by Bill of Exception No. 9.

In Bill No. 15 it appears that the witness, Mrs. Jettie Brown, was asked on cross-examination the following question: "Right smart drinking around your house that night, wasn't there?"

The witness answered that she did not know. The court refused to exclude the question and answer.

In Bill No. 16 it is shown that Mrs. Jettie Brown was asked the following question: "Did you see Monroe Graham drinking there (at the home of the witness) that night?"

The witness replied that she did not see the appellant drinking there that night.

Proof that a witness or the accused on trial was drunk has been received many times. The precedents on the exact questions here presented are meagre.

Reference is made to the case of Hodges v. State, 166 S. W., 512, in which the offense was aggravated assault. After announcing that a fault in the charge demanded a reversal, the court expressed the opinion that inquiry of each of the witnesses as to whether or not he had been drinking or was drunk on the day of the occurrence or whether he had been drinking with the appellant or whether the appellant had a bottle of whisky in his store that day and the fight did not take place in the store or near it, was under the facts of the case irrelevant

and calculated to be prejudicial to the accused and upon another trial should be omitted.

In the case of Lewis v. State, 33 Texas Crim. Rep., 618, Judge Davidson used the following language: "The prosecution elicited from appellant, on cross-examination, the fact that he was drinking at the time he disturbed the congregation assembled for religious worship. We are unable to appreciate the force of the objections urged to the admission of this testimony. It threw light upon his mental condition, tended to affect the weight of his testimony, and was the proper subject-matter of legitimate inquiry."

The principle stated was approved in the opinion written by Judge Ramsay in the case of Green v. State, 53 Texas Crim. Rep., 490, 110 S. W., 920, from which we take the following:

"We think the rule in any case should be, where a witness is produced and undertakes to give a statement of the facts coming under his observation, transactions to which he is a party and on which the guilt of a citizen is sought to be established, that with a view of testing the credibility of the witness, his opportunity for observation, the state of his memory, the condition of his mind, and all that, it should and would be proper to interrogate the witness as fully as might be necessary in respect to his condition of drunkenness or sobriety."

In Wallace v. State, 65 Texas Crim. Rep., 654, a case of homicide, the following testimony was so qualified by the court as to exclude it:

"George Henry Scruggs was drunk at that time."

Scruggs had testified that he was not drunk at the time of the homicide, which occurred about midnight, and was not drunk the next morning at about eight o'clock. In writing the opinion, Presiding Judge Davidson said: "The witness had stated that he was not drunk, but had been drinking some the night before, and had denied being drunk on the following morning when the justice of the peace reached the scene of the trouble for the purpose of holding an inquiry. The justice of the peace would have testified, had he been permitted to do so, that the witness was drunk. We are of opinion that this testimony was admissible under the authorities."

In McCarty v. State, 107 Texas Crim. Rep., 589, the accused was on trial for the murder of Ernest Gibson. Appellant offered several witnesses to prove that Gibson was drunk at the time of the alleged offense and that they had seen him drunk several times during the same afternoon. In dealing with the subject, the court used the following language:

"In our opinion Mr. Branch correctly states the rule to be that—

" 'For the purpose of testing the memory of the witness and his capacity for correct observation, and to affect the weight of his testimony, it may be shown by the witness or by others if necessary that the witness was drunk when the matters about which he testified occurred.' Branch's Ann. P. C., sec. 43."

The text is supported by Lewis v. State, 33 Texas Crim. Rep., 618, 28 S. W., 465, and many other cases.

In the case of Roberts v. State, 35 S. W. (2d) 175, the subject was dealt with in the following language: "That the accuracy of recollection of events or transactions is impaired by intoxication, or that it at least tends to impair it, is generally recognized. See Corpus Juris, vol. 23, sec. 1770. The impaired condition of the mind, either from a temporary cause, such as intoxication, excitement, fright, physical pain, or from the infirmities of old age or other infirmities, is deemed a proper subject of inquiry by the court for the consideration of the jury in weighing the testimony of individuals. It is not deemed sound to conclude that the temporary mental impairment which may confuse the mind of an individual would be an impeachment of moral integrity before or after the temporary impairment had ceased."

As stated in the original opinion, at the residence of Mrs. Jettie Brown there was an all-night party on the night of the tragedy. The appellant's participation in the party and the drinking of intoxicants by him and his companions was thought by the trial court and by this court upon the original hearing to be a proper subject of disclosure to the jury to the end that they might intelligently weigh the evidence.

In Wharton's Criminal Evidence, 10th edition, vol. 2, p. 1722, sec. 917, the following statement is found: "Conduct, actions, and general behavior of the accused, immediately preceding the homicide, are relevant to show that he was armed and in a vicious humor."

In the case of State v. Hill, 49 Amer. St. Rep., 316, the Supreme Court of Louisiana used the following language:

"It was the duty of the state to establish the malicious homicide of the deceased, at the hands of the accused, beyond a reasonable doubt; and if, in making that proof, the drunkenness of the defendant was developed, it was a circumstance for the consideration of the jury, along with other proven facts of the case, in determining the felonious intent of the homicide. But it does not follow that it was the duty of the state to make proof of a negative, by showing beyond a reasonable doubt that

the defendant's state of intoxication was of a degree not to interfere with his judgment and intelligence, or preclude the possibility of his entertaining malice toward the deceased. The trial judge properly declined to give the requested special charge, and the accused is without grounds of complaint."

Many decisions exhibit the disposition of the courts in the United States to take the view opposed to that of the English courts on the subject of persons charged with crimes who are shown to have been intoxicated at the time the offense was committed. The English courts have rejected such condition as a defense to the crime. In our country the courts and the legislatures have gone far in favor of making intoxication a mitigating circumstance, and most of the authorities deal with that phase of the law. See article 36, P. C., 1925. The facts in the instant case present the question in a different angle, namely, the right of the state to prove as a circumstance bearing on the mental condition of one accused of crime the fact that at the time of the alleged crime he was under the influence of intoxicating liquor. There are many cases where the accused was a witness that proof that he had been drinking was received, and some as illustrated above where he was not a witness.

In the murder statute, article 1257a, P. C., it is stated in substance that the *state and the defendant are privileged to introduce all relevant facts surrounding the killing, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed.* See Cyc. of Law & Proc., vol. 12, p. 618, sec. 5; Graham v. State, 51 S. W. (2d) 401; Whatley v. State, 117 Texas Crim. Rep., 447; McDaniel v. State, 119 Texas Crim. Rep., 442. It is thought that the action of the accused approximately at the time of the homicide in drinking whisky would be a relevant fact as part of the res gestae. Whether so or not, it seems clearly to be a relevant fact which the jury might consider in determining the state of mind of the accused at the time the homicide took place. That the consumption of whisky has some effect upon the mind of the individual who drinks it is not only self-evident but verified by text-writers upon the subject. See Herzog's Medical Jurisprudence, p. 528, sec. 720, et seq. It has a varying effect upon different persons, ranging from slight exhilaration to total loss of the faculties.

Conceding that the drinking of whisky occurred at a time practically coincident with the striking of the fatal blow, according to the state's testimony, it seems that perforce of the statute mentioned above, the use of whisky by the accused was

one of the facts available to the jury in reaching a conclusion touching the state of mind of the appellant.

The motion for rehearing is overruled.

*Overruled.*