# OCTOBER 3, 1934

## W. D. Burkhart v. The State.

No. 16829.   Delivered June 6, 1934.
Rehearing Denied October 3, 1934.
Reported in 74 S. W. (2d) 692.

2

The opinion states the case.

*J. F. Taulbee,* of Georgetown, and *L. E. Laurence,* of Austin, for appellant.

*D. B. Woods,* Cr. Dist. Atty., and *Sam Burnap,* Asst. Dist. Atty., both of Georgetown, *E. A. Camp, of Rockdale, Wilcox & Graves,* Sp. Counsel, of Georgetown, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 45 years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Henry James by kicking him with his foot and by "stomping" him with his foot, and by striking and beating him with his hand, and by striking, beating, bruising and wounding him with some heavy instrument, a better description of which said instrument the grand jurors were unable to give.

Appellant is sixty years of age and weighs about 250 pounds. Deceased was a youth 17 years of age and weighed about 107 pounds. It was the theory of the State that appel-

lant attacked deceased about 4 o'clock a. m. on Sunday, September 10, 1933, in the bend of a road in the northern part of the village of Thorndale and inflicted injuries upon him from which he died in a hospital in the city of Taylor in Williamson County the following Wednesday. Touching the transaction, State's witness Arnold Barchanger, who was a boy about 15 years of age, testified, in substance, as follows: The witness, deceased and Don Lee Johnson attended a negro supper and dance on the night of September 9, 1933, remaining there until about 2 o'clock the next morning, during which time they engaged in gambling. The parties then started home, riding in an automobile from the place where the supper was held to the public highway. They walked from there on toward home in a southerly direction. Becoming tired and sleepy, the witness and deceased decided to lie down in the bend of the road and sleep. Their companion left them there and went on towards town. The witness lay down on the edge of the highway with his head on the tarvia and his feet toward the ditch at the edge of the road. Deceased lay down on the edge of the road with his head on the witness' stomach and his feet in a northeasterly direction, paralleling the road. In this position they both fell asleep. The witness awakened with a pain in his left side. As he opened his eyes he saw appellant immediately back of his head, and while he was still lying on his back, he saw appellant going toward deceased, and deceased backing away. As appellant approached decesed, deceased struck at him with his fist, and thereupon appellant struck deceased and knocked him down. Appellant then jumped on deceased with both feet, and jumping up and down on his stomach with all of his weight, kicked him in the side while he was down. In the meantime the witness got up to a sitting position and, while in that position, appellant passed him and said to him that if he told about the matter he would kill him. Appellant then proceeded toward a car standing in the road, and, walking around to the front end of the car, made the remark, "I will get Jesse too." He then got in his car and drove off in the direction of the main street of Thorndale. Appellant's automobile made no unusual noise. The witness being unable to move deceased, proceeded into town alone, and, securing some assistance, took deceased from the place of the assault down to the railway station, where he was placed on a bench. The witness then procured a comic section of a Sunday paper and went to appellant's cafe, where he read the paper.

From the time of the alleged assault the witness Barchanger did not divulge or intimate to anyone the true manner in which deceased was injured until he and Don Lee Johnson were carried from Thorndale to the city of Austin about the 5th of October, 1933, by two rangers. The witness testified that these rangers carried him to the ranger headquarters in the Capitol about 5 o'clock in the afternoon, and that he and Johnson were kept there continuously until 11 o'clock that night, when Jesse James, the brother of deceased, arrived. Further, he testified that during the time they remained in the rangers' headquarters there was nothing said by himself or the rangers until 11 o'clock on that night, and that until Jesse James arrived he did not know what the rangers wanted with him. At 11 o'clock the rangers began talking to him about deceased, and he then, for the first time, told how deceased's injuries were received. His written statement was taken by the rangers and signed by him. Again, the witness testified that he was afraid appellant would kill him.

Although deceased was rational until a few minutes before he died, he made no statement as to the transaction resulting in his injuries. It appears that there were no bruises on the surface of the body of deceased. A brother of deceased testified that he asked him on several occasions how he was injured, and that deceased would not talk about it.

The State's proof was to the effect that on the Saturday night in question appellant was drinking heavily. He took a brother of deceased to task for not being more friendly with him, telling him that his father, prior to his death, had borrowed two thousand dollars from him, which he had never paid. Further, between 11 and 12 o'clock of the same night, appellant assaulted a young man in the town of Thorndale. Again, in the presence of his wife, he threatened to shoot the lights out of his cafe. He tried to force young men to drink with him. He threw a beer bottle at a passing car. In short, the testimony shows that he was in a reckless mood a few hours before the homicide and was in an intoxicated condition. Proof on the part of the State was to the further effect that appellant stated to several parties on Sunday morning after deceased had been injured that he (appellant) had run one s-of-a-b out of town and had kicked two small boys. One of the witnesses testified that appellant stated to him that he kicked "two of those smart-alecs and stomped them on the road." The State's testimony was to the effect that deceased died from the result of the injuries he had received as the doctors were preparing

to operate on him. It was in evidence that after receiving the injuries, blood came from deceased's mouth, and that he complained constantly that his stomach was hurting him.

Appellant did not testify in his own behalf. He introduced witnesses whose testimony raised the issue of alibi. Other witnesses testified that appellant's car made considerable noise when operated.

The credibility of the witnesses and the weight to be given to their testimony was for the jury. If the witness Barchanger was to be believed, his testimony was sufficient to support the judgment of conviction. The opinion is expressed that we would not be warranted in concluding that the testimony does not comport with human experience and is unreasonable.

Bill of exception No. 3 relates to appellant's objection to certain questions propounded by the district attorney to the witness Barchanger. It appears from the bill that the answers elicited merely showed the movements of the witness prior to the time Colonel Merchant and appellant had a conversation in the presence of the witness. The bill fails to show any conversation between others in appellant's absence. No error appears.

Bill of exception No. 4 recites that State's witness Schiller was permitted to testify, over appellant's objection, that he was in appellant's cafe about 8 o'clock on Sunday morning after deceased had been injured and that appellant appeared to have been drunk. The court withdrew this testimony from the jury. The qualification appended to the bill recites that four other witnesses had testified without objection that appellant was drunk shortly prior to the homicide. Bill of exception 5 relates to the same matter as bill 4. Bill of exception 7 recites that the State was permitted to prove, over appellant's objection, that on Sunday morning after the homicide appellant appeared to be drinking. The matter embraced in bill of exception No. 8 is similar to that found in bill 7. Bill 10 relates to proof on the part of the State to the effect that appellant was drinking on the night of the homicide. This bill is qualified with the statement that other witnesses had testified to the same effect without objection on appellant's part. We have grouped these bills in view of the fact that they deal with one subject, that is, the propriety of proving that one on trial for homicide was intoxicated shortly prior to the homicide. In the case of Graham v. State, 69 S. W. (2d) 73, it was shown that on the night of the assault Graham had been drinking, and

that at daylight after the assault had been committed he was still drinking. In concluding that this testimony was properly receivable, this court, speaking through Presiding Judge Morrow, used language as follows:

"In the murder statute, article 1257a, Vernons Ann. P. C., it is stated in substance that the State and the defendant are privileged to introduce all relevant facts surrounding the killing, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. See Cyc. of Law & Proc., vol. 12, p. 618, sec. 5; Graham v. State (Texas Crim. App.), 51 S. W. (2d) 401; Whatley v. State, 117 Texas Crim. Rep., 447, 36 S. W. (2d) 751; McDaniel v. State, 119 Texas Crim. Rep., 442, 42 S. W. (2d) 435. It is thought that the action of the accused approximately at the time of the homicide in drinking whisky would be a relevant fact as part of the res gestae. Whether so or not, it seems clearly to be a relevant fact which the jury might consider in determining the state of mind of the accused at the time the homicide took place. That the consumption of whisky has some effect upon the mind of the individual who drinks it is not only self-evident but verified by text-writers upon the subject. See Herzog's Medical Jurisprudence, p. 528, sec. 720 et seq. It has a varying effect upon different persons, ranging from slight exhilaration to total loss of the faculties.

"Conceding that the drinking of whisky occurred at a time practically coincident with the striking of the fatal blow according to the State's testimony, it seems that perforce of the statue mentioned above, the use of whisky by the accused was one of the facts available to the jury in reaching a conclusion touching the state of mind of the appellant."

Bill of exception No. 6 relates to the introduction in evidence of a part of a statement made by one of appellant's witnesses before the grand jury. It is shown in this bill that the proper predicate had been laid for the impeachment of the witness, and that a portion of the statement was introduced for the purpose of impeaching said witness. We quote from Branch's Ann. Tex. P. C., sec. 177, as follows: "A witness may be impeached on a material matter by proof of his statements made before the grand jury which are in conflict with his testimony given on the trial." In support of the text many authorities are cited, among them being Turner v. State, 51 S. W., 367.

Bill of exception No. 11 complains of the admission of the testimony of Norman Clement. This testimony was later withdrawn from the jury. In substance the bill shows that on the night of the alleged homicide appellant accosted the witness as he was passing him in his automobile and asked him "why in the hell he did not stop"; and, further, that appellant followed him, and that he speeded up and got on another street. In view of the withdrawal of this testimony and further in view of the fact that the record is replete with testimony that appellant was drunk and in a reckless mood, and assaulted one man in the town of Thorndale, we are unable to reach the conclusion that the matter presents reversible errer. See Lewis v. State, 65 S. W. (2d) 771. We disclaim any intention of holding that the testimony was inadmissible.

Appellant sought a new trial in part on the ground of newly discovered evidence, attaching to his motion the affidavit of William Perry in which he (Perry) stated that he saw the witness Barchanger at his watermelon trailer on the public square of Thorndale about 8 o'clock Sunday morning—four hours after deceased was injured—and that Barchanger told him that deceased had passed out from having drunk a swallow of whisky. Further, it was stated in the affidavit that the witness went to Barchanger's home with him and got some wine; that in the conversation he had with Barchanger, he told him that his leg was hurting him as the result of an automobile running over him while he and deceased were on the road. This witness testified on the motion for a new trial.

The opinion is expressed that appellant failed to use diligence to obtain the testimony. It appears that Perry stayed in the town of Thorndale, where he sold watermelons. His presence could have been had at any time during the trial. It developed in the testimony on the main trial that Barchanger had gone to the watermelon trailer when he left deceased on the road. On his cross-examination of Barchanger, appellant elicited from him that on the morning after the deceased was injured the witness gave the watermelon peddler some wine. He said: "I went home and got the wine and gave it to the watermelon man. He was a white man. I did not get a watermelon from him." The witness further testified: "No, the first thing that I did was not to get my wine and go back to the watermelon peddler. I ate breakfast first; he was down there at the car and I said he could have it, and the watermelon man came to our house and got the wine." Another witness testified upon cross-examination by appellant's counsel that

he saw the witness Barchanger at the watermelon wagon with Perry about 8 o'clock on the morning deceased was injured. The proof mentioned was given upon the main trial of the case and elicited not only by appellant's counsel but by the district attorney. It is sufficient to warrant the conclusion that it was owing to a want of diligence that the evidence was not sooner discovered. Appellant and Perry were well acquainted. A new trial will not be granted for testimony alleged to have been newly discovered which could have been obtained at the trial by the use of ordinary diligence. Branch's Ann. Penal Code, sec. 198; Esher v. State, 13 Texas App., 607.

We have not discussed all of appellant's bills of exception. However, a careful examination of the entire record leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING

LATTIMORE, JUDGE.—We have carefully gone over appellant's motion for rehearing. The case is most unusual. The killing of a lad by a man of mature years, by means of kicking and stomping him with his feet at or before daylight on a public road, in the presence of another boy,—would seem to justify the effort of the State in all those matters complained of in bills of exception 4 to 10, to show the condition of appellant's mind and the character of his acts during the night and day preceding and following that of the homicide. Malice may be shown by evidence establishing a reckless disregard of human life, a heart regardless of social duty and fatally bent on mischief,—the existence of which is inferred from acts done or words spoken, this being the very definition given the term malice. Martinez v. State, 30 Texas App., 129; Jackson v. State, 31 Texas Crim. Rep., 552; Harrell v. State, 39 Texas Crim. Rep., 228. As we view this record, those things,— complaint of which is made in said bills,—were put before the jury so that having opportunity to consider his condition, acts and words, they might better pass on the grave question as to whether he was actuated by malice aforethought or not.

We can not bring ourselves to agreement with appellant that this verdict is contrary to law and reason. That appel-

lant made the assault was testified to by witness Barchanger who was present; by Schiller who said that the next morning after said assault appellant told witness he had had a round the night before with some school boys, and stomped the James boy (deceased) to learn him some sense; by Rosenthal to whom appellant made the statement the next day after the alleged assault, that the night before he had kicked two small boys' behinds, and later said to Rosenthal that he stomped them; by Ponton who testified that appellant told him the day following the alleged assault, that he shined his shoes on a couple of smart Thorndale boys; by Felfe who heard appellant say on the same day that he kicked two smart alecs and stomped them on the road the night before. Other witnesses testified to other incriminating facts. Reputable doctors testified that the fact that no external bruises were observed upon the boy's body was not conclusive,—that one might be injured internally in the manner claimed without external bruises. The credibility of the witnesses is always for the jury.

Appellant also insists that we erred in holding that his showing of diligence to secure the testimony of witness Perry was not sufficient,—Perry having made an affidavit which was appended to appellant's motion for new trial as supporting the claim of newly discovered evidence. While we think there is no showing of diligence to secure Perry's testimony, we further observe that nothing in his said affidavit or his oral testimony given on the hearing of the motion for new trial, seems of sufficient materiality to lead this court to conclude that the presence of this testimony on another trial would probably produce a different result; nor to relieve such claimed new evidence of its apparent character of being merely impeaching. Nothing therein shed light on how deceased received his injury, or denied or contradicted the fact that deceased was hurt as Barchanger claimed. It will be noted that on the trial and at all times Barchanger claimed that when he woke up out on the road at the scene of the alleged homicide, in the edge of the little town of Thorndale,—his left hip or leg was hurting him, and that appellant's car was standing near. Barchanger made no statement in testimony as to what hurt his hip or leg. Perry's affidavit that Barchanger told him the morning after the alleged assault that his leg was hurting and that an auto had run over him, and that he lacked a little of getting off the road, at the place where he and deceased lay down,— in no sort of way controverts the fact that after appellant came on the two boys lying in the edge of the road, he stopped

his car and assaulted deceased. Barchanger may have believed that his own hurt hip came from being struck by appellant's car. The granting of a new trial for new evidence is a matter largely left to the discretion of the trial court. Lewis v. State, 82 Texas Crim. Rep., 285; Gordon v. State, 88 Texas Crim. Rep., 17; Johnson v. State, 91 Texas Crim. Rep., 441; Bank v. State, 95 Texas Crim. Rep., 384. If the materiality of newly discovered evidence is doubtful, the action of the trial court in refusing the motion for new trial will not be reviewed. Ross v. State, 98 Texas Crim. Rep., 567; Inman v. State, 100 Texas Crim. Rep., 537; O'Hara v. State, 57 Texas Crim. Rep., 577. We are of opinion that nothing indicates an abuse of the discretion of the trial court in refusing to grant appellant a new trial.

Not being able to agree with any of the reasons advanced in the motion for rehearing, same will be overruled.

*Overruled.*