JAMES BLEVINS AND ROBERT LEE BARTON v. STATE

No. 34,446.   March 28, 1962
Motion for Rehearing Overruled June 13, 1962

*Tom Burton,* Houston, for appellant.

*Frank Briscoe,* District Attorney, *Carl E. F. Dally, Howell E. Stone,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

Appellants James Blevins and Robert Lee Barton were jointly charged, tried and convicted for the murder of Ruby Bickmore and each appellant was assessed punishment at confinement in the penitentiary for a term of 99 years.

The voluminous record containing a statement of facts of 615 pages shows a merciless killing of the deceased.

The facts are summarized in the State's brief which we here adopt and quote therefrom in part as follows:

"The murder of the victim, Ruby Bickmore, took place at a cheap rooming place or hotel. * * * * It was called the Cypress Hotel but was commonly known as the "Greenhouse". * * * * It appears that the Appellant Barton was among the guests residing at the Cypress Hotel. The Appellant Blevins was not a resident at the hotel but visited there frequently. On the day of the killing, Blevins came to the hotel early in the afternoon and was so intoxicated that he la*id* out on the ground behind the hotel in the shade of a tree for a part of the afternoon."

The victim of the murder, Ruby Bickmore, and her common-law husband, Earl Sheldon Bickmore, were guests of the Cypress Hotel. On the evening of the 23rd of June, 1960, at about 10:00 p.m., Ruby and her husband, the Appellants, Mrs. Mary K. Rowell, the manager of the hotel, and her husband, Lloyd Edwin Rowell, and several other guests were present at the hotel. It appears that all parties present were doing considerable drinking. After Earl and Ruby Bickmore had retired to their room, the Appellants were heard and seen running up and down the hall in their underclothes. This was about 11:00 p.m. or a little later. They were running up and down the hall and kicked on several of the doors. When they kicked on the door of the room occupied

by Earl Bickmore and the victim of the attack, Lloyd Rowell told them to get back to their room and put their clothes on and they got "kind of smart". After this time, Ruby Bickmore and her husband came out of their room to use the bathroom facilities of which there was only one on the premises. At this time, the Appellants and the Bickmores had some dispute in the hall and the manager's husband, Rowell, separated them and the Bickmores went back to their room. About twenty minutes later close to midnight, another commotion was heard in the hallway. At this time, Barton was seen kicking down the door to the Bickmore's room and Blevins was standing behind him. They entered the room and hit Bickmore with a bottle, and he was knocked unconscious. Then they were seen to drag Ruby Bickmore out of the door and down the hall. "They were using vile languages and there was a lot of it * * * it sounded like they were kicking." As the Appellants laughingly dragged Ruby Bickmore down the hall, she was screaming and they dragged her to near the middle of the building close to the office. Mrs. Rowell, the manager, got up and saw them dragging Ruby up the hallway. Ruby was begging them to leave her alone. As Ruby Bickmore broke away from the Appellants, one of them hit her and she fell, "and they started stomping her and kicking her". "Mr. Barton was hitting her and kicking her around her head. And Mr. Blevins was kicking her around her privates." "The best I could tell, they both hit her and it knocked her down." "Mr. Blevins was kicking her and cussing her. Mr. Barton was beating her, had his fists, beating her on the head (indicating)." "Well, I stood there about five or ten minutes and she quit screaming and hollering while they were kicking her. And after she got still, well, they picked her up and carried her into this room and they shut the door."

The above testimony was that of Mrs. Rowell, the manager of the hotel. The room into which Ruby was carried was that occupied by Blevins and Barton. During the time that the Appellants were administering the fatal beating to Ruby Bickmore, they were laughing and cussing and using vile language. "They used a pretty vulgar word. And that is when they picked her up and carried her into their room." "Mr. Blevins said: 'I am going to take you into my room and I am going to have an intercourse with you.' "

After about fifteen minutes, the witness Mary Rowell testified "I could hear them laughing and carrying on over there, and I went back and sat down. In a few minutes, it must have been about fifteen minutes, they opened their door and was running back up and down the hall, drinking again, and laughing.

And Mr. Rowell went over there and carried Mrs. Bickmore back down to her room and laid her on her bed."

Mrs. Rowell testified that she did not have a telephone in her office, that the only telephone was in the hall, and that Mr. Blevins had said that if anyone tried to call the police out there, he would kill them.

The Appellants left the premises the next morning, and Ruby Bickmore remained on the bed in her room all day long. Her husband was lying on the bed there with her, getting up only to go to the bathroom during that day. The Bickmores also stayed in the bed during the following night. On the next morning, the victim was still lying in bed, which was in a filthy condition, and blood was running from her nose. At that time, an ambulance and the police were called, and Ruby Bickmore was removed to Jefferson Davis Hospital where she later died on the 25th of June, 1960.

Dr. Jachimczyck, Medical Examiner for Harris County, testified that he performed an autopsy upon the body of Ruby Bickmore and, in his opinion, the cause of death was "a left sub-dural hematoma, which in plain language means a blood clot on the left side of the brain". Coupled with this, he testified that there were also bruises and tears or contusions and lacerations of the brain as well. He further testified that the type of hemorrhage that was present in this case was "of the vintage of two or three days type of hemorrhage". Dr. Jachimczyck also testified that the bruises, lacerations and other injuries inflicted upon Ruby Bickmore were consistent with having had someone strike her with their hands, fists or kicking and stomping her with their feet."

Appellants did not testify upon the main trial but presented testimony in support of their defense that someone other than themselves, either Earl Bickmore or Lloyd Rowell, had inflicted physical violence upon the deceased and was responsible for her death.

The court submitted to the jury the issue of appellants' guilt of both murder with and without malice and of aggravated assault. The court further instructed the jury on the law of principals and submitted the defensive issue of whether the deceased's death was caused by acts of the appellants.

The jury by their verdict resolved the disputed issues against

appellants and we find the evidence amply sufficient to sustain the judgment of conviction.

There are no formal bills of exception or objections to the court's charge and no brief has been filed on behalf of appellants.

We have examined the informal bills of exception appearing in the record and find no reversible error therein.

Informal Bill of Exception No. 1 presents appellants' exception to the court's action in refusing to permit appellants' witness Jack Adams to testify that on Tuesday, June 21, before the fatal stomping and kicking on Thursday, June 23, the deceased complained to the witness in the presence of her husband of a beating which he had inflicted upon her. Upon objection by the State that the same was hearsay the court refused to admit such testimony before the jury. The statement made by the deceased was not shown to have been made in presence of the appellants, was clearly hearsay, and the court did not err in sustaining the State's objection thereto. 18 Texas Jur., par. 59, page 121; 24 Texas Jur. 2nd, par. 565, page 78; Graham v. State, 126 Texas Cr. Rep. 531, 69 S.W. 2d 73.

Informal Bill of Exception No. 2 relates to the court's refusal to permit appellant to impeach the State's witness Mary Rowell by showing that she had filed a number of complaints for aggravated assault against her husband other than as testified to by her. This was clearly an effort to impeach the witness upon an immaterial matter and was properly excluded by the court. Evans v. State, 76 Texas Cr. Rep. 56, 172 S.W. 795, and Hancock v. State, 123 Texas Cr. Rep. 16, 57 S.W. 2d 111.

Appellants sought a new trial on the ground of newly discovered evidence and alleged in the motion that subsequent to the trial they had discovered evidence that the door leading into the room occupied by the deceased and her husband at the hotel was never damaged which was contrary to the testimony of the State's witnesses that on the night in question the appellants entered the room by kicking and breaking the door panel. The newly discovered evidence would have only tended to impeach the testimony of the State's witnesses and is not a ground for new trial in this state. See note 119 under Art. 753, V.A.C.C.P., and the many cases cited thereunder. In overruling the motion the court did not err.

The judgment is affirmed.

Opinion approved by the Court.