A bailment has been defined to be a delivery of personal property to another for some purpose upon a contract, either expressed or implied, that such purpose shall be carried out. Fulcher v. State, 32 Tex. Cr.R. 621, 25 S.W. 625; Lee v. State, 81 Tex.Cr.R. 117, 193 S.W. 313; Branch's Ann.P.C., 2d Ed., Sec. 2713.

Under the evidence appellant received the $1500 with the agreement that under certain circumstances it would con-stitute a part of the consideration for the washateria, while under other circumstances it would be returned to Mr. Hancock. This we hold to be a bailment under the terms of Art. 1429 P.C. and the above definition.

The evidence is sufficient to sustain the jury's verdict and we find no reversible error.

The judgment is affirmed.

George W. JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 28893.

Court of Criminal Appeals of Texas.

April 17, 1957.

C. C. Divine, Houston, for appellant.

Dan Walton, Dist. Atty., Benjamin Woodall and Thomas D. White, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The offense is murder; the punishment, thirty years in the penitentiary.

The testimony of the state shows that the appellant, while in the Zebra Lounge on the night of April 20, said that "whenever he saw Heywood (deceased) he was going to kill him"; that the appellant and the deceased were at the lounge the following day where the appellant was seen opening his knife. Shortly thereafter they were seen going along the sidewalk, and when they were next seen the appellant had the deceased down on the ground; the appellant had in his hand "a pocket knife or a case knife * . * * you could tell it was a blade or something"; nothing was seen in the hands of the deceased, and

"Heywood was begging for his life." Then appellant left the scene and deceased was holding his throat tightly as he went to a porch nearby, and when he released his hold on his neck "blood squirted all across the porch." An undertaker testified that the deceased's death was caused by the "severing of the jugular vein."

Appellant did not testify or offer any evidence in his behalf.

The evidence is sufficient to support the jury's verdict.

Appellant questions the qualification of the undertaker, Terry Owens, to testify to the cause of death of the deceased.

Terry Owens testified that he had studied anatomy, had assisted in embalming bodies for six years, had served a three year apprenticeship as an embalmer, had had a license as an embalmer for one year in Oklahoma, was presently an apprentice as an embalmer in Texas, and had seen and explored knife wounds on many bodies. He further testified that in preparing the body of the deceased he found an incision "from about one inch below the chin going downward through the middle of the clavicle or collar bone", and "could see the jugular vein had been severed", and expressed the opinion that the deceased's death was caused by the severing of the jugular vein.

We conclude from the testimony of the witness Owens of his education, training and experience as well as his observation and examination of the deceased's body that he was sufficiently qualified to give his opinion that the severing of the jugular vein caused the death of the deceased.

Appellant contends that the trial court erred in refusing his amended motion for a new trial filed November 1, 1956. The amended motion alleged that six witnesses whose testimony is material to his defense have been discovered since the trial on the merits, that he had used due diligence in

preparing his case for trial and in discovering said testimony, and that said witnesses after hearing of appellant's conviction made themselves and the facts they knew which were pertinent to appellant's defense known to his attorney. The six witnesses named in the amended motion are: Geraldine Wilson, Annie Lee Tennard, Ned Bennett, Frances Bennett, Louis Lofton, and Annie Ruth Watson. The affidavits of five of said witnesses were attached to the amended motion for a new trial and they relate facts which raise the issue of self-defense on the part of the appellant.

On the hearing Annie Lee Tennard testified that at the time of the difficulty she lived next door to the appellant, and that on Sunday before the Monday the case was set for trial the first time, appellant took his wife (now Geraldine Wilson from whom he is now divorced), Louis Lofton and her to his attorney's office because he knew we saw the difficulty. She testified that Geraldine Wilson told the attorney how the trouble occurred, and that she sat there and "verified what Geraldine said."

Louis Lofton testified that he and his wife, Annie Lee Tennard, went with appellant to the office of his attorney before the trial of the case, that the attorney asked him some questions about the killing, and that he was present at the trial.

Ned Bennett testified that appellant personally knew that he saw the fight, that he told appellant he wanted to be a witness and went with him to his attorney's office.

Frances Bennett, wife of Ned Bennett, testified that she, Annie Lee Tennard, and Geraldine Wilson, former wife of the appellant, saw the difficulty, and that she told appellant's attorney in appellant's presence that she would be a witness for him.

Appellant testified that he went with his former wife, Geraldine Wilson, with whom he was living at the time of the killing and who had told him that she saw it, Louis Lofton, Annie Lee Tennard, Ned Bennett, and Frances Bennett to the office of his attorney before the trial, and that when the case was first set for trial, he, Geraldine Wilson, Annie Lee Tennard, Ned Bennett, and Frances Bennett met his attorney in the Criminal Courts Building.

Annie Ruth Watson testified on the hearing that at the time of the killing she was living at the same address with the witness Frances Bennett, that she had known the appellant about two years and had met him when he came to visit Frances, that she was at home when the killing occurred which was "almost in the front yard where the deceased died", and that she told Frances after the killing that she saw it. She further testified that she had known Geraldine Wilson, appellant's former wife, quite a while prior to the killing.

It was shown that both Geraldine Wilson and Frances Bennett went to the office of appellant's attorney before the trial on August 13, and that both met appellant and his attorney at the courthouse when the case was first set for trial in May. There is no proof of any inquiry made at the scene of the killing or in the neighborhood.

Appellant was released on bail April 22 or 23, and remained on bail until the conclusion of the trial.

When the trial judge called the case for trial appellant announced ready.

No subpoenas were issued for the six persons named in the amended motion for a new trial to appear as witnesses on the main trial.

■ Appellant's acquaintance with and relationship to Annie Lee Tennard, Ned Bennett, Frances Bennett, Louis Lofton, and Geraldine Wilson as shown by the record and his knowledge as well as that of his attorney that they either saw or knew of facts pertaining to the killing a reasonable time before the trial, his failure to summon them as witnesses and his announcement of ready for trial without moving for a continuance shows that he did not exercise due diligence in order to secure their testimony on the trial. Gephart v. State, 157 Tex.Cr.R. 414, 249 S.W.2d 612; Acosta v.

State, Tex.Cr.App., 285 S.W.2d 764; Harper v. State, Tex.Cr.App., 291 S.W.2d 950.

 The record shows that Annie Ruth Watson lived at 3131 McIlhenny; the cutting occurred at 3127 McIlhenny, and the deceased fell in front of 3129 McIlhenny. Annie Ruth Watson and Frances Bennett lived at the same address and Frances knew that she saw the killing. Annie Ruth knew Geraldine Wilson, appellant's former wife, before the killing and had met appellant at Frances' about two years previously when he came to visit Frances. It appears that if the appellant who was on bail or his attorney had made proper inquiry of the known witnesses and in the neighborhood of the killing they would have learned of Annie Ruth Watson and any pertinent information she may have possessed. A new trial will not be granted for testimony alleged to have been newly discovered which could have been secured by the use of ordinary diligence. 31 Tex.Jur. 272, Sec. 74; 1 Branch's Ann.P.C., 2nd Ed., 252, Sec. 220; Holmes v. State, 106 Tex.Cr.R. 515, 293 S.W. 571; Burkhart v. State, 127 Tex. Cr.R. 1, 74 S.W.2d 692; Weeks v. State, 134 Tex.Cr.R. 410, 115 S.W.2d 649; Everett v. State, Tex.Cr.App., 216 S.W.2d 281.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.