JOE L. ANGLE, JR. V. STATE

No. 28,873. June 19, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) November 20, 1957.

306

*Thomas M. Ryan (Dixie, Ryan & Schulman,* of counsel), Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady* and *Thomas D. White,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is consenting to accept a bribe, as denounced by Article 159, V.A.P.C.; the punishment, two years.

Our original opinion is withdrawn. When this case was first submitted, we declined to pass upon certain questions because the certificate attached to the statement of facts did not certify that it contained all the evidence adduced upon trial.

It is now shown that it was the intention of the attorneys for the state and the defendant, by signing the certificate attached to the statement of facts herein, to agree to it as a complete

statement of facts, and the affidavits of said attorneys are to the effect that there were no additional facts elicited upon the trial on the merits which are not incorporated therein.

It is also made to appear that the form of certificate is the same as that used in many appeals to this court, by reason of which fact appellant should not be charged with lack of diligence.

While there are cases which would appear to support a contrary holding, we have decided that the additional evidence that has come into the record by way of affidavits of the attorneys who approved the statement of facts is available and that under the present record the statement of facts may be considered.

In Berrian v. State, 85 Texas Cr. Rep. 367, 221 S.W. 282, the statement of facts, though not approved, was considered upon the statement of the trial judge and the affidavits of counsel for appellant that the trial judge believed that he had signed and filed the statement of facts and his failure to do so was by inadvertence and oversight.

In Curry v. State, 156 Texas Cr. Rep. 379, 242 S.W. 2d 421, the statement of facts was not considered because not filed within the time allowed by law. On rehearing, it was considered, a showing having been made that it had been in the hands of the clerk before the expiration of the time allowed and the clerk had corrected his certificate.

It was pointed out that "we are not empowered to hear evidence in such matters, unless there is an admission of such facts as will justify the conclusion. The clerk of the district court has power to change his file mark if he has made a mistake, or a certificate from him that he had received the instrument within the proper time and had erroneously thereafter placed on it a different file date would be considered as an admission by the State. In such event, we would be justified in receiving the statement of facts."

Whether by reason of an admission by the state or the correction of the certificate to the agreement intended by counsel, we need not decide. In fairness to appellant, the statement of facts will be considered.

It was established that on or about the date charged in the indictment the city of Houston was engaged in a large scale purchase and condemnation of property for street right-of-way

purposes and that the appellant was Superintendent of the Land Acquisition Division of the Treasury Department of said city and that one Nisbet was a subordinate appraiser under the appellant.

The accomplice witness Joe Sam testified that, as a representative of his father's estate, he held extensive real estate holdings in the city of Houston, among them being lots 18 and 19 in block 14 of the Forbush Addition to said city; that the appellant, whom he had known for some time, showed him what purported to be an appraisal of said lots which indicated their value to be something in excess of $14,000; and that he voiced his protest that such valuation was inadequate. Sam stated that the appellant made the suggestion that the price could be increased if Sam would share with him equally any advance in the price which he might be able to effect and that he agreed to such arrangement. Sam testified further that the city of Houston paid $19,694.52 for such lots sometime after he made this agreement with the appellant and, pursuant thereto, he handed the appellant a check in the sum of $2,475.00, which represented one-half of the approximately $5,000.00 increase which the appellant had been able to add to the price of the lots in question over and above the original valuation which had been shown to him.

Sam admitted that he had often asked the appellant's advice on real estate values but denied that he had ever agreed to pay or had paid the appellant for such advice and denied that the $2,475.00 check or any other check which he had given the appellant was in payment for such counsel.

Sam further testified that he had sold several other tracts of land to the city of Houston and that on each occasion he had likewise compensated the appellant for his services in securing an increased valuation on said tracts.

It was shown that sometime after the appellant's conversation with Sam the city council received in the regular order of procedure a valuation of the lots in question, signed by Nesbit and approved by the appellant, showing their value to be $19,-694.52 and that the council authorized such sum to be paid.

It was established by the bank records that the $2,475.00 check mentioned above was endorsed by the appellant and Nesbit, was deposited to Nesbit's credit at the bank, and that Nesbit then drew a check on his account in the sum of $1,237.50

and deposited such sum to appellant's account. The checks and bank records were introduced in evidence.

The appellant did not testify in his own behalf but offered certain witnesses who testified that only one valuation on the lots in question had ever appeared in the records of the city, that the price paid by the city was in line with the prices paid for other lots in the same addition, and that Nesbit and the appellant had spoken of doing outside appraisal work for Sam.

The facts will be more fully discussed in connection with the contentions advanced by the appellant's eminent attorney in brief and argument.

Appellant moved to quash the indictment and for an instructed verdict on the grounds that the office which the indictment alleged the appellant held was not such an office as is named in the bribery statutes. Article 160 V.A.P.C., which enumerates the executive, legislative and judicial officers who come within the purview of the bribery statutes concludes with this phrase, "and all other city, county and state officials." We quote the pertinent portion of the indictment: "was then and there the duly appointed, qualified and acting Acting Superintendent of Land Acquisition Division of the Treasury Department of the City of Houston."

The appellant takes the position that he was named in such indictment as the "Acting Superintendent" and that there is no such office.

The state's position is that the double use of the word "acting" is a typographical error which would not vitiate the indictment.

Ordinance No. 60 of the city of Houston, which was introduced in evidence, creates the position of "Superintendent of Land Acquisition Division of the Treasury Department."

Ordinance No. 7740 lists the officers and employees of the Treasury Department as follows: "Director of Treasury, Tax Assessor & Collector, Superintendent of Land Acquisition Division, Assistant Superintendent of Land Acquisition Division . . . ." This is followed by a list of more than one hundred employees in said department, such as accountants, clerks, draftsmen, etc.

The court in his charge required the jury to find before they might convict that the appellant was the duly appointed, qualified and acting Superintendent of the Land Acquisition Division of the Treasury Department of the city and that he was an "executive officer of said city."

The record reflects that more than a year prior to the date charged in the indictment the appellant had been promoted from Assistant Superintendent of the Land Acquisition Department to "Superintendent" of such department upon the recommendation of his superior, the Director of the Treasury, and that such promotion was certified by the Director of Civil Service and Personnel Officer of the city.

The evidence establishes that the appellant as "Superintendent of the Land Acquisition Division" had fourteen employees, such as "right-of-way agents" and "secretarial help," under his supervision, and that his duties were that of "Superintending Head of the Appraisers and the Negotiators employed by the city in the Land Acquisition Division" and, as such, "made the assignment within his division to the people who would make the appraisal of the property" and who were accountable to him, which appraisal when made would be transmitted to the city council for action and that the mayor and the city council relied upon such appraisals.

We have no difficulty in concluding that the "Superintendent of the Land Acquisition Division of the Treasury Department" was a city official within the meaning of Article 160, supra, and appellant's contention in this regard is overruled. The cases relied upon by the appellant relate to employees whose duties involved far less discretion or responsibility than those imposed upon the appellant and therefore are not controlling in the case at bar. The fact that the appellant was able to do what he did as shown by this record is highly persuasive that he was an officer with considerable authority.

Appellant's contention is that there was no such office as "Acting Superintendent," and we must determine whether or not a fatal variance exists between the indictment and the proof. We are at a loss to determine how the addition of the unnecessary word "acting" in the indictment could have in any way misled the accused in preparing his defense. If he was "Acting Superintendent" or "Superintendent," then he was acting in the capacity of superintendent. In any event, his acts were those

of Superintendent of the Land Acquisition Division, and he was so informed in the indictment.

Appellant next contends that the state failed to corroborate the testimony of the accomplice witness Sam. Independent of the testimony of Sam, we have these facts:

1. The appellant and his subordinate Nesbit submitted to the city council an appraisal of certain lots belonging to Sam. Shortly thereafter, the council approved such appraisal and ordered payment to be made in the exact amount as recommended by the appellant and Nesbit. Within a short while thereafter, Sam executed a check in the sum of $2,475.00 payable to the appellant, and that check was endorsed by the appellant and Nesbit, and the proceeds divided among themselves.

2. On several other occasions when Sam sold property to the city of Houston, appraiser Nesbit was always assigned to place a value upon the Sam property, even though there were several other appraisers acting under the appellant's supervision.

3. On another occasion, when the city purchased property from Sam checks were issued by him to both the appellant and Nesbit in the sum of $3,650.00 each. In this connection, we wish to observe that the evidence as to the other sales by Sam to the city was first introduced by the appellant.

The court in his charge instructed the jury that the witness Sam was an accomplice and told them that they must find corroboration of his testimony from other testimony in the case. We find the above evidence to be sufficient to meet the requirements of the court's charge. The checks bearing the appellant's endorsement take this case out of the rule expressed in Devine v. State, 156 Texas Cr. Rep. 530, 244 S.W. 2d 232, and the other cases relied upon by the appellant.

Appellant next complains of the court's charge:

1. Because it failed to instruct the jury that the evidence which corroborates that given by the accomplice must be incriminating in nature. The charge as given is substantially the same as was approved by this court in Henderson v. State, 97 Texas Cr. Rep. 247, 260 S.W. 868, and Quinn v. State, 136 Texas Cr. Rep. 131, 123 S.W. 2d 890 and sufficiently charges the jury on the question of accomplice testimony.

2.   Because it improperly limited the proof of other offenses. The court's charge must be judged as a whole. The jury were told explicitly that the state relied for a conviction upon a transaction which occurred on May 1, 1954, relating to lots 18 and 19 in block 14 of the Forbush Addition and a check in the sum of $2,475.00, and that they were not to consider any evidence as to any other transaction except as it might aid them in passing upon the appellant's guilt or innocence of the May 1st transaction. This was a clear and proper limitation.

3.   Because the above instruction was upon the weight of the evidence in that it singled out and gave undue emphasis to the date of May 1st on which the accomplice had testified the appellant consented to accept the bribe. Reliance is had upon Walker v. State, 146 Texas Cr. Rep. 321, 174 S.W. 2d 974. It would appear from the opinion in the Walker case that it presents the converse of the situation before us here. In that case, the court's charge gave undue emphasis to the ancillary offenses, admitted on the question of intent, while the charge in this case centered the jury's attention on the offense upon which the state had elected to rely.

4.   Because the court gave an incorrect definition of "executive officer," that portion of the charge read as follows:

"By the term 'executive officer' as used herein is meant one who holds by election or appointment a public office.

" 'Public office' is the right, authority and duty created and conferred by law by which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public."

In Kimbrough v. Barnett, 55 S.W. 120, the supreme court of this state approved the above definition of public office.

Appellant contends that the court erred in permitting the witness Hofheinz, former mayor of the city, to explain and amplify Section 5 (a) of Ordinance 60, which provides, in part, as follows: "The Land Acquisition Division and the officers and employees of the Treasury Department assigned to it, shall handle appraisals and negotiations incidental to the acquisition of rights of way * * *." As we understand the mayor's testimony, he merely explained how the appellant performed the duties im-

posed upon him by the above ordinance and how he was able, under the terms thereof, to do what he did in the case at bar. There was nothing in his testimony, as we see it, that was repugnant to the ordinance.

Appellant next complains that he was not permitted to interrogate one Tom Tolburt to determine if he had spoken to the accomplice witness about the case during the trial. Neither the bill nor the record reflect what Tolburt's testimony would have been if the court had permitted him to be interrogated. In the absence of such a showing, no error is shown.

Appellant complains that he was not furnished the testimony of the witness Sam given before the grand jury. This complaint arises out of a rather peculiar set of circumstances. While the witness Sam was being cross-examined, appellant's counsel asked if he had not told the grand jury certain things about the appellant which were inconsistent with his testimony on this trial. The witness declined to answer on the grounds that the proceedings before the grand jury were secret. Appellant did not call upon the court to require the witness to answer but, instead, asked the court to require the district attorney to turn over to him the record of the testimony of the witness before the grand jury. We have been cited no authority and know of none that supports the appellant's contention that he should have been furnished with the transcript of the witness' testimony before the grand jury to use in his cross-examination of the witness, especially in view of the fact that the witness had neither affirmed or denied what his testimony before the grand jury had been. Biscoe v. State, 86 Texas Cr. Rep. 249, 216 S.W. 174, supports the appellant's contention that the claim of secrecy made by the witness was without merit, but it is not authority on the question presented by this bill.

Appellant's last contention relates to the admissibility of the evidence concerning Nesbit and his connection with the offense on trial and other ancillary offenses. The evidence before us, as we see it, amply established that Nesbit was acting with the appellant and sharing with him the fruits of his wrongdoing. If this be true, then the acts of the appellant's co-conspirator which took place during the existence of the conspiracy were admissible. As pointed out earlier, the appellant introduced certain evidence concerning other sales made by Sam to the city which showed on its face that Nesbit had been the appraiser.

Finding no reversible error, the judgment of the trial court is affirmed.