Arthur BAKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 35570.

Court of Criminal Appeals of Texas.

April 10, 1963.

Rehearing Denied May 22, 1963.

Second Motion for Rehearing Denied
June 19, 1963.

Arthur L. Lapham, Victoria (on appeal only), for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder; the punishment, ninety-nine years in the penitentiary.

The indictment charged that on or about the 31st day of August, 1961, the appellant did "unlawfully, voluntarily and with malice aforethought kill and murder Laura Baker in some way or manner, and by some means, instruments and weapons to the Grand Jurors unknown * * *."

The foreman of the grand jury which returned the indictment against appellant testified that in its investigation of the case the grand jury was unable to determine the actual means or the kind or character of weapon used in killing the deceased.

Appellant and the deceased were husband and wife.

Lloyd Hotz, called as a witness by the state, testified that on the day in question the appellant took the witness and his woman companion to his home out in the country from Cuero. Arrangements were made for appellant to return that evening around 7 o'clock and take them back to town. Appellant returned about dark in his panel truck. At such time, his wife was with him. Both had been drinking. After Hotz informed appellant that he was not going back to town, appellant and his wife left.

Twenty minutes later, appellant returned to the house. When Hotz told him to have his wife come in, appellant replied: "That bitch better not come in here." While he was lying on the porch his wife came up on the porch and in a "kind of suffering voice" said: " 'Loyd, give me a drink of water.' " Hotz got some water and told appellant to give it to his wife, who was "kind of slumped back on the porch." Appellant took the water and threw it in his wife's face, saying: " 'I told you not to follow me, you bitch, you.' " Hotz then told appellant not to mistreat his wife, at which time appellant pulled her off the porch and kicked her in the left kidney. Thereupon, Hotz grabbed appellant, who ran to his truck and returned with a .22 calibre rifle. Hotz and his woman companion then ran out the back door. Hotz testified that he then heard appellant start his truck, back out onto the pavement, and proceed down the highway very fast; that after he had traveled some two hundred fifty yards he "kicked it into second right quick * * * jammed all of the brakes * * *" and then it sounded like the motor was "running kind of idle like" and appellant was either backing up or turning around. Hotz stated that he then heard appellant call: " 'Loyd' " and that " 'he hollered three or four times * * * I killed mamma. I killed mamma.' "

The proof shows that there were drops and smears of blood on the front porch of Hotz's house and drippings of blood from the house to the front and out into the public road. Some two hundred fifty yards from the house a pool of blood was in the road and some blood had run off to one side.

Dr. A. J. Bohman, who pronounced the deceased dead upon arrival at the hospital, testified that at such time she was very bloody and had a huge laceration on the back of her head, her eyes were full of blood, there were bruises on her forehead, nose, knees, and elbows, and that there was a depressed fracture on the left side of the skull where the bones were pushed in

and that "You could feel all the way down to the base of the brain." The doctor stated that in his opinion the cause of death of the deceased was multiple skull fractures and intercranial brain damage which was caused by more than one blow to the head.

Dr. Herbert Francis Cable, who performed an autopsy upon the body of the deceased, gave a similar description of the injuries and wounds and expressed his opinion that the cause of death of the deceased was brain hemorrhage from fracture of the skull. He also testified that in his opinion the skull fracture and other wounds were similar to ones caused by more than one blow.

As a witness in his own behalf appellant testified that on the day in question the state's witness Hotz hired him to help him move; that he carried Hotz and his woman companion to the house that morning and returned to the house that night with his (appellant's) wife. Appellant related that when Hotz stated that he was not going to move, he and his wife left in the truck and as he turned a corner out on the highway his wife fell out of the truck. He turned around and saw her walking up a lane leading to the house, after which they went to the house and he washed her face with water. Appellant and Hotz got into an argument. Appellant and his wife left. Appellant stated that he put his wife in the back of the truck, because the chair used in front as a seat on the passenger side was loose; that he then drove off as fast as the truck would go and as he changed from "second to high" he heard the back door fly open and he looked back and saw his wife was not in the truck. He then turned around, drove back, and saw his wife lying flat on her back in the road. Appellant stated that after he went to where she was and saw she was breathing, he called to Lloyd and said: "Bring me some water. Ma is hurt." Appellant stated that when he did not bring the water he went to the house and got some and returned. While he was bathing her face,

someone drove up and he told the person to call the police and an ambulance. He stated that he then put his wife in the back of the truck and drove straight to the hospital. Appellant denied that he hit his wife on the day in question and denied that he killed her.

The court submitted the case to the jury upon a charge on the law of circumstantial evidence. The defense of accident interposed by appellant was also submitted to the jury.

We first overrule appellant's contention that the evidence is insufficient to support the conviction because the state failed to prove the corpus delicti. The evidence adduced by the state is sufficient to show that the deceased came to her death by violence and that appellant was the guilty agent. The proof of his statement: "I killed mamma," at the scene of the homicide, together with the other proven facts and circumstances, is sufficient to exclude every other reasonable hypothesis except that of appellant's guilt, as required by the charge.

By formal bill of exception No. I, appellant complains of the failure of the district attorney to deliver to him a copy of the testimony of the state's witness Hotz before the grand jury, which the court had ordered delivered to appellant for the purpose of cross-examination.

The record reflects that the witness's testimony before the grand jury had been tape-recorded and a transcription made of the recording.

No inquiry was made of the witness as to what he had testified to before the grand jury.

Under a similar situation, we held in Angle v. State, 165 Tex.Cr.R. 305, 306 S.W.2d 718, that no reversible error was reflected.

The record further reflects and the bill of exception certifies that the transcript of

the testimony had been misplaced and lost and that it was impossible for the district attorney to deliver it to appellant. It was also shown that the tape used in recording the testimony had been erased.

The record also shows that in response to the court's order a statement made by the witness to the county attorney was furnished to appellant, which statement he used in cross-examination of the witness. The bill of exception certifies that:

" * * * no objection and exception *was* made to the failure of the District Attorney to furnish any statements other than those that were furnished defense counsel at the trial * * *"

Bill of exception No. II presents appellant's complaint to the district attorney's failure to provide him, in response to the court's order, with a copy of a statement made by the witness Hotz to the district attorney in his office. No reversible error may be predicated thereupon, as this bill also certifies that appellant made no objection to the district attorney's failure to furnish any statements to him other than those that were, in fact, furnished at the trial.

By formal bill of exception No. V, appellant insists that the court erred in refusing to allow a copy of the statement made by the witness Hotz to the district attorney to be attached to his formal bill of exception No. II, on appeal. No error may be predicated upon the bill, as under the court's qualification thereto, which was accepted by appellant, the court does not certify that he refused to allow the statement to be attached to the bill. Furthermore, the record referred to in the bill of exception shows that appellant made no request that the statement be attached to the bill. .

By formal bill of exception No. III, appellant complains of the following statement made by the district attorney in his closing argument to the jury:

"Something else, in a case like this, under the law, if the defendant wants to he is entitled to bring up character witnesses to show what a good character he had."

The bill reflects that while appellant had filed application for a suspended sentence, it had been withdrawn, and that the court sustained appellant's objection to the argument and instructed the jury not to consider it. We are unable to agree with appellant that such argument was so obviously prejudicial that its harmful effect could not be removed by the court's instruction.

By formal bill of exception No. IV, appellant contends that Dr. Cable withheld certain vital evidence at the trial in not bringing to the courtroom with him the autopsy report which he made upon examination of the deceased and in failing to disclose in his testimony all of his findings in the report.

Dr. Cable's failure to bring the autopsy report to the court was not error, as no request was made that he bring it with him. The facts certified in the bill do not reflect that the doctor withheld any vital evidence while testifying as a witness. No reversible error is shown.

By formal bill of exception No. VI, appellant complains of the trial court's failure to swear the jury as a unit after all twelve jurors had been selected in the case. The bill shows that as each juror was selected he was sworn by the court. No request was made to swear the jury as a whole and no objection was made to the court's failure to so swear them as a body. The court's action in swearing each juror as he was selected was in compliance with Art. 622, Vernon's Ann.C.C.P., prescribing the oath to be administered to each juror in a capital case. No error is presented by the bill.

By formal bill of exception No. VII, appellant complains of the court's refusal to grant a new trial on the ground of newly discovered evidence and that the state had suppressed certain evidence in the case.

In his motion for new trial, appellant alleged that on the last day of the trial he learned that Dr. Cable had sent the brain and kidney of the deceased to Dr. Paul M. Obert, a pathologist at Victoria, for examination, and that after the trial he discovered that Dr. Obert had made a written report, based upon his examination, which would refute the state's testimony that the death of the deceased was caused by more than one blow. Appellant alleged in the motion that the evidence of Dr. Obert's report had been suppressed by the state.

Attached to the motion was Dr. Obert's affidavit in which he stated that he did examine the brain and kidney of the deceased and made a report of his findings. The doctor further stated that had he been called upon to testify upon the trial he would have testified that the type blow or injury causing the hemorrhage in the brain and kidney could not be determined accurately by examination of the specimen submitted but that the type of hemorrhage in the brain tissue was most commonly seen as a result of a single blow to the head.

The evidence adduced upon the hearing of the motion for new trial does not show any suppression of evidence by the state relative to Dr. Obert's report. Nor does the record reflect that appellant exercised due diligence in obtaining the alleged newly discovered evidence relative to Dr. Obert's report.

Dr. Cable testified upon the trial that the brain and kidney of the deceased were sent to Dr. Obert for examination.

Appellant made no application for a subpoena to secure Dr. Obert's attendance as a witness at the trial, nor was any request made for a delay until the witness could be contacted by appellant.

Under the record, the court did not abuse his discretion in refusing to grant a new trial. Jones v. State, 165 Tex.Cr.R. 7, 301 S.W.2d 917.

■ We have examined appellant's informal bills of exception appearing in the statement of facts and find no reversible error therein.

■ Appellant's complaint to the testimony of his three children, John Warren Baker, Mrs. Frances McNabb, and Mrs. Lenore Kocian, relative to prior threats and mistreatment of the deceased by appellant, is without merit. No objection was made to the testimony of Mrs. McNabb and Mrs. Kocian. The testimony of appellant's son, John Warren Baker, relative to appellant threatening and striking the deceased, six years before the homicide, was admissible under Art. 1257a, V.A.P.C., as showing the previous relationship between appellant and the deceased. Stokes v. State, 162 Tex.Cr.R. 401, 286 S.W.2d 141. Appellant's objection to the son's testimony on the ground of remoteness was not well taken, in view of the proof that appellant continued to mistreat the deceased.

The judgment is affirmed.

Opinion approved by the court.

## ON MOTION FOR REHEARING

MORRISON, Judge.

Appellant takes issue with our holding that the evidence was sufficient to exclude every other reasonable hypothesis except that of appellant's guilt. In our original opinion, we omitted a reference to the testimony of Officer Worthington, who stated that at the hospital he took a rifle from the front part of appellant's truck and when he handed it to the sheriff he noticed blood on his hands, as well as the testimony of Officer Clark that there was "blood around over the gun," both stock and muzzle, which would support the theory that deceased met her death as the result of repeated blows about the head, face and shoulder as indicated by the doctor's testimony. The fact that asphalt was found in some of the wounds would not militate against such a finding because a large pool of blood was found on the highway where the jury may reasonably have concluded appellant discovered her body after she had walked from the Hotz's house onto the highway and where appellant hurriedly applied his brakes upon discovering her. We have reconsidered the record and remain convinced that the State has, in this case, sufficiently discharged that burden.

We disposed of appellant's contention that reversible error was reflected by the argument complained of without citation of authority. We are urged to differentiate the case at bar from Harmon v. State, 119 Tex.Cr.R. 426, 45 S.W.2d 583, and Freeze v. State, 133 Tex.Cr.R. 595, 113 S.W.2d 539.

In Harmon, the accused submitted a written request to the court to instruct the jury not to consider the argument of the prosecutor, and such request was by the court refused. In the case at bar, the court sustained the objection, instructed the jury not to consider the argument, and appellant asked for no further relief. Recently, in Bearden v. State, 169 Tex.Cr.R. 437, 334 S.W.2d 447, we said:

"The court ruled favorably to the appellant on his objection. After his objection was sustained he appears to have been satisfied because he asked the court for no further relief. Appellant is in no position to complain of said statement. 5 Tex.Jur.(2) 61, Sec. 39; Martin v. State, 157 Tex.Cr.R. 210, 248 S.W.2d 126; Earwood v. State, 161 Tex.Cr.R. 171, 275 S.W.2d 652; Pruitt v. State, 164 Tex.Cr.R. 340, 299 S.W.2d 148."

In Freeze, the prosecutor went outside the record and invited the jury to investigate the reputation of the accused after their service on the jury had been completed. This argument is more akin to that which we held reversible in Bowers v. State, 171 Tex.Cr.R. 345, 350 S.W.2d 27, and the cases there cited rather than the case at bar.

Here, the prosecutor was obviously, though incorrectly, operating upon the assumption that once an application for suspended sentence was made it was proper for him to comment upon the failure of appellant to call reputation witnesses. The court quickly informed him in the presence of the jury that he was in error and instructed him to proceed along another line of discussion.

Though not without difficulty, we have concluded that this case is more like Gant v. State, 168 Tex.Cr.R. 448, 328 S.W.2d 768, wherein the court stated that he did not agree with the prosecutor and instructed the jury not to consider the argument.

Appellant for the first time raises the question of the competency of the county attorney, who assisted in the prosecution, on the grounds that he had not paid his Bar dues.

The majority of this Court reversed Martinez v. State, 167 Tex.Cr.R. 97, 318 S.W.2d 66, because the attorney *appointed by the court* to defend the accused was not a qualified practicing attorney on the grounds that the due process clause of the 14th Amendment requires that one charged with a capital felony be represented by a qualified advocate. The Supreme Court of the United States has, in Douglas & Meyes v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, since Martinez extended the rule to non-capital cases.

We have here a case in which the competency of the district attorney, who interrogated all but one of the witnesses, is not questioned. The attack is leveled against the county attorney, who so far as this record reveals questioned only one witness.

Be this as it may, we are not prepared to hold that an accused has any constitutional right to have a competent lawyer prosecute him. If he is not competent, then the accused is amply protected in the event of conviction by the reversible errors brought about by the incompetent prosecutor. No such guarantee is present when counsel appointed by the court to represent an indigent accused is not qualified.

Appellant may not here collaterally attack the qualification of the prosecutor to act as county attorney. Snow v. State, 134 Tex.Cr.R. 263, 114 S.W.2d 898.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.

WOODLEY, Presiding Judge (concurring).

I agree that this appeal was properly disposed of on original submission.

I do not agree that the question of the competency of the county attorney is before us for review. Martinez v. State, 167 Tex. Cr.R. 97, 318 S.W.2d 66, relied upon by the appellant, is wrong and should be overruled.