NO. 07-01-0147-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 20, 2002
_____

TRUMAN TOMMY MATTHEWS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 155TH DISTRICT COURT OF WALLER COUNTY;

NO. 98-05-9372; HON. DAN R. BECK, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Truman Tommy Matthews (appellant) appeals his conviction for murder. Via five issues, appellant contends that the trial court erred by 1) failing to find appellant incompetent to stand trial due to physical illness, 2) excusing a juror who was already sworn and "engaged in the trial," 3) admitting evidence of a prior conviction during the State's case-in-chief, 4) admitting hearsay testimony and 5) instructing the jury on "provoking the difficulty." We affirm.

***Background***

Appellant was charged with murdering his 37 year old step-son. He allegedly killed the man in self-defense after the step-son began hitting him with a frying pan. A jury found appellant guilty of the offense and sentenced him to life in prison.

***Issue One- Competency to Stand Trial***

Appellant initially contends that the trial court denied him due process when it refused to hold him incompetent to stand trial. The alleged incompetency arose from appellant's physical condition. That is, he purportedly was too physically (as opposed to mentally) ill "to be heard in a meaningful manner" since "his concerns included whether or not there was a receptacle available to catch his vomitus at an appropriate time." We overrule the point.

In effect, appellant argues that he was incompetent to stand trial, and protests the trial court's decision to proceed.[1] To be incompetent, as suggested by appellant, he had to have lacked the ability to understand and assist in defending himself. *See* TEX. CODE CRIM. PROC. ANN. art. 46.02, §1A(a) (Vernon Supp. 2002) (defining incompetency as lacking a 1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding or 2) rational as well as factual understanding of the proceedings against the person). Furthermore, one is presumed competent until he proves otherwise by a preponderance of the evidence. *Id.* at art. 46.021A(b). Finally, we cannot overturn a finding of competence unless it is so against the great weight and

_____

[1]Appellant does not contend that the trial court erred in failing to hold a hearing to determine if he was incompetent due to illness. Nor does he say that the trial court should have submitted the issue to a jury. Rather, he questions the court's decision to proceed with trial when he was unable "to understand and assist in defending himself."

2

preponderance of evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990); *Jackson v. State*, 857 S.W.2d 678, 680 (Tex. App.–Houston [14th Dist.] 1993, pet ref'd).

Aside from unsworn comments made by his counsel prior to trial, appellant cites us to no evidence illustrating that he lacked the present ability to consult with his attorney with a reasonable degree of rational understanding or that he lacked a rational or factual understanding of the proceedings against him. Rather, we are simply directed to twelve volumes of the record (comprising 1000 to 1500 unnumbered pages) wherein "information, letters, and medical records demonstrating the level of [his] illness" supposedly appear.[2] Yet, it is not our duty to search for evidence supporting an appellant's argument; it is his duty to directly cite us to it. TEX. R. APP. PROC. 38.1(h). Thus, appellant's mere allusion to the record is not enough to show that the trial court's implicit finding of competence was against the great weight and preponderance of the record. Nor do his references to trial counsel's argument uttered below fill the void; this is so because unsworn comments by trial counsel are not evidence. *Guzman v. State,* 923 S.W.2d 792, 798 (Corpus Christi 1996, no pet).

Simply put, appellant did not carry his burden to show us that error occurred below. Thus, we reject his claims regarding incompetency.

---

[2]How these documents show that appellant lacked 1) the present ability to assist in his defense or 2) a rational understanding of the proceeding also goes unexplained. Moreover, to the extent that appellant failed to provide citation to the record, we note that his explanation for doing so is not an acceptable excuse. While a "reference copy" of the record may not have been made for his personal use, the appellate record was readily accessible through the clerk of this court, had he asked for it. Nowhere do we see where he asked for it.

### *Issue Two - Replacing a Seated Juror*

Next, appellant contends that the trial court erred in replacing a seated juror after trial began. The juror in question professed sympathy for the appellant upon discovering that appellant suffered from a heart condition and the doctor who treated appellant was the one who treated the juror's spouse. This doctor, according to the juror, allegedly brought his wife back from death. In turn, the doctor's act of reviving the juror's wife somehow caused the juror to repose sympathy upon other patients helped by the doctor. Additionally, mention of the doctor caused the juror to become distracted which, in turn, caused him not to "hear some of the testimony" and "pay much attention to" the testimony. The juror also stated that: 1) he was "prejudiced in a sense that [he did not] want to see anything happen to" appellant; 2) he was not "100% unbiased;" 3) he could find appellant guilty; 4) he could assess punishment "but [his] decision could be affected" in favor of appellant; 5) he could assess a life sentence but "a five year sentence would probably be a life sentence for him;" and, 6) the relationship "could affect how [he] view[ed] the facts of the case." According to appellant, these circumstances did not render the juror ill or disabled, and, therefore susceptible to removal. This was especially so when the trial court thought he "could make a good juror."[3] Thus, removal of the individual allegedly was improper. We overrule the point.

Jurors who have become disabled may be excused from serving. TEX. CODE CRIM. PROC. ANN. art. 36.29(a). The Texas Court of Criminal Appeals has included in the

---

[3]The act of removing the juror tends to contradict the trial judge's statement that he thought the individual "could make a good juror" in this particular case. As the old adage goes, acts speak louder than words.

4

category of "disabled" any condition that inhibits the individual from fully and fairly performing the functions of a juror. *Ramos v. State*, 934 S.W.2d 358, 369 (Tex. Crim. App. 1996). Moreover, lacking the ability to concentrate due to emotional stress caused by a death in the family, a family illness, or time pressures of a new job have been held examples of such disabling conditions. *Id.*

Here, the juror indicated that he could render a guilty verdict and assess punishment. Yet, he also confirmed that discovery of the relationship between appellant and the doctor who saved the life of the juror's wife caused him to be distracted and emotional. Again, he "didn't pay much attention to the testimony" once the doctor's name was mentioned. So too did he reveal that he did not want anything to happen to appellant, that he could not be 100% unbiased, that he thought five years equated a life sentence given appellant's alleged health, and that the relationship could affect his view of the facts. These circumstances evinced emotional stress affecting the juror's ability to concentrate upon the evidence and argument being presented, a task implicit in the duties of a juror. They also created basis upon which the trial court could hold the juror disabled under the auspices of *Ramos*. Thus, the decision to remove the juror did not fall outside the zone of reasonable disagreement and constitute an instance of abused discretion. *See Reyes v. State,* 49 S.W.3d 552, 554 (Tex. App. -- Houston 2001, pet ref'd) (holding that the decision whether to remove a juror is one which lies within the trial court's considered discretion).

### Issue Three - Evidence of a Prior Conviction

Appellant next complains about the trial court's decision which allowed the prosecution to admit evidence of appellant's prior conviction for aggravated assault. The assault occurred in 1991 (approximately 7 years before the killing at bar) and involved appellant shooting the same individual he eventually killed at bar, namely his 37 year old step-son. According to appellant the evidence was inadmissible because 1) his medical condition had deteriorated over time and 2) the undue prejudicial affect of the evidence substantially outweighed its probative value. We overrule the issue.

When prosecuting one for murder, the State is authorized to offer evidence of "all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.36(a). Consequently, evidence of a prior assault by the accused upon the victim is admissible. *Baker v. State*, 368 S.W.2d 627, 632 (Tex. Crim. App. 1963); *Thompson v. State*, 677 S.W.2d 73, 78 (Tex. App.–Beaumont 1983, pet ref'd). And, that the assault occurred seven years before the eventual murder did not render the evidence too remote. *See Stephen v. State*, 293 S.W.2d 789, 790 (Tex. Crim. App. 1956) (noting that an incident occurring eight years before the murder was not too remote). Given this authority, we can but only hold that the trial court had basis to admit the evidence of the prior assault.

Next, how appellant's deteriorating medical condition rendered the admissible evidence inadmissible goes unexplained by appellant. He supports his conclusory

6

statement to that effect with neither citation to the record nor with analysis of any sort.[4] Furthermore, his mere allusion to *Smith v. State*, 5 S.W.3d 673 (Tex. Crim. App. 1999), is quite inapposite.  In *Smith*, the court simply held that art. 38.36(a) of the Code of Criminal Procedure did not supercede 403 or 404(b) of the Texas Rules of Evidence.  *Id.* at 679. The case did not address the issue appellant utters before us.

Similarly absent is any explanation, analysis and legal citation illustrating how the probative value of the evidence was substantially outweighed by its alleged prejudicial affect.  He simply concludes that application of Rule 403 barred admission of the prior conviction.  Yet, again, cursory briefing like that before us does not comply with Rule 38.1(h) of the Texas Rules of Appellate Procedure and results in waiver of the contention. *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000) (holding that an appellant must, at the very least, ground his contention in analogous case law or provide the court with a relevant jurisprudential framework for evaluating his claim to comply with the briefing requirements).

### Issue Four - Hearsay Statements

Appellant contends, in his fourth issue, that the trial court erred by allowing "Lieutenant White to testify to what Mrs. Matthews told him when he took her written statement." At trial, Mrs. Matthews (appellant's wife) was asked if appellant had threatened to kill her and the decedent.  She exclaimed that she did not remember.  At that point, the prosecution tendered to her a written statement she previously identified as being her own.

---

[4]To the extent that appellant could be heard as suggesting that his physical condition some how prevented him from attacking his step-son, the record itself would belie that.  Therein, we find evidence of his becoming angry with the decedent, acquiring a handgun, and shooting him.  That, at the very least, suggests that he was physically capable of acting in a way injurious to others irrespective of his motives.

7

After reading the document, she again acknowledged that the statement was hers, conceded that she could have said something about a threat, and then replied that she did not recall uttering such a comment, however. Later, the State called White who, when asked, confirmed that Mrs. Matthews said appellant threatened her and the decedent. This was objectionable, according to appellant, because Matthews had not unequivocally denied making the statement. We overrule the point.

One cannot impeach a witness through a prior inconsistent statement if the witness unequivocally "admits" that he made the statement. *Broden v. State*, 923 S.W.2d 183, 188 (Tex. App.–Amarillo 1996, no pet). However, in equivocating or otherwise qualifying his answer, the witness renders the prior inconsistent statement admissible. *Id.* Here, Mrs. Matthews equivocated when answering the prosecutor about whether her husband threatened her and her son with death. So too did she equivocate when asked if she previously stated that such threats had been made by appellant. Thus, the prosecution was free to call Officer White to impeach her with her prior inconsistent statement, and the trial court did not err in permitting that to occur.

### Issue Five - Charge Error

In his final point, appellant contends that the trial court erred by including in the jury charge an "instruction on provoking the difficulty." We overrule the issue.

Both common and statutory law recognize that one who provokes the use of force cannot claim self-defense. *Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998); TEX. PENAL CODE ANN. 9.31(b)(4) (Vernon 2002) (stating that "if the actor provoked the other's use or attempted use of unlawful force" the actor's use of force is not justified).

8

However, before the trial court may instruct the jury about this rule of law, certain evidence must appear of record. That is, there must be some evidence from which a rational jury could conclude beyond reasonable doubt that 1) the defendant did some act or used some words which provoked the attack on him, 2) the act or words were reasonably calculated to provoke the attack, and 3) the act was done or words uttered for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Smith v. State*, 965 S.W.2d at 513.

Next, if the trial court believed that such evidence existed and, therefore, submitted the instruction, our task is to assess its decision by viewing the record in a light most favorable to the decision. *Id.* at 514. And, in making this assessment, we must remember that provocation involves a devious mind, *id.*, or one that is necessarily crafty or designing. *Id.* at 518. Indeed, we recognize that few would admit to contriving and then pursuing a course of conduct designed to cause another to attack him for the purpose of justifying his own responsive attack. Because of this, the circumstances surrounding the incident are all important. They include words and deeds occurring immediately before and during the attack. Also, those occurring later as well as those indicative of the pre-existing relationship between the parties can be quite informative, as suggested throughout the *Smith* opinion.

Here, we find evidence of record illustrating a less than amicable relationship between appellant and the 37 year old step-son. The latter periodically lived with his mother and appellant. Furthermore, on one previous occasion appellant shot his step-son with a firearm. That incident resulted in appellant being convicted for assault and

9

sentenced to prison for two years. Additionally, on the day of the killing, the victim had been using appellant's tools to fix a car. Apparently upon completing his work, he went to bed. Thereafter, appellant discovered that one of his tools (a socket) was missing and grew angry. He then acquired a handgun from his room, returned to the living area, sat down, and placed the deadly weapon next to him in plain view. During this time, his step-son remained in his bedroom apparently asleep. These circumstances caused appellant's wife to grow concerned. So, she not only attempted to find the socket herself but also awakened her son for help in finding the missing tool. Whether her concern grew as a result of hearing appellant threaten her life and that of her son is unknown, but there is evidence of record illustrating that such threats were made.[5]

Appellant and his step-son subsequently encountered each other in the living room. At that point, the two spoke momentarily, during which time the victim offered to buy a new socket. According to appellant's wife, her son then entered the kitchen, obtained a frying pan, returned and hit appellant with it approximately twice. In response, appellant shot him with the handgun.

As previously mentioned, provocation involves a devious, scheming mind. It is not something subject to easy assessment because the judge and fact-finder must try to determine what the defendant was thinking. That is no less true here. Nevertheless, if

---

[5]As illustrated under issue four, this evidence was offered as a prior inconsistent statement of the wife. Whether consideration of that evidence is limited simply to impeachment purposes is not something we need to address, for no limiting instruction was requested from or afforded by the trial court. S*ee Willover v. State*, 70 S.W.3d 841, 848 n. 8 (Tex. Crim. App. 2002) (holding that prior inconsistent statements are admissible for impeachment purposes). And, having been admitted without an accompanying instruction restricting its use, the factfinder was entitled to consider it for all purposes. *Garcia v. State*, 887 S.W.2d 862, 878-79 (Tex. Crim. App. 1994) (holding that once evidence is admitted without a limiting instruction, it becomes part of the general evidence of the case and may be considered as proof to the full extent of its rational persuasive power).

circumstances illustrated that 1) X was mad at and threatened to kill Y, 2) X shot Y with a firearm on a previous occasion, and 3) X obtained a handgun prior to encountering Y and openly displayed it when the two subsequently interacted, a rational jury would have before it some evidence which it could construe, beyond reasonable doubt, as an act of provocation by X. These circumstances also would permit one to reasonably infer that Y was aware of X's mental state, the gun, and X's prior use of the gun against Y. So too would those circumstances authorize a rational jury to conclude, beyond reasonable doubt, not only that X could reasonably expect Y to attack (if for no reason other than self-preservation) but also that X intended to provoke the conflict.[6]

Aside from the use of the labels "X" and "Y", circumstances mentioned in the preceding paragraph is the very evidence found in the record here. And, more importantly, the conclusions alluded to are the very ones which a rational jury could have made at bar from that evidence. Consequently, we have no dispute with the trial court's decision to instruct the jury on provocation.

Accordingly, we affirm the judgment of the trial court.

Brian Quinn
Justice

Do not publish.

---

[6]As the *Smith* court recognized in quoting from *Flewellen v. State*, 83 Tex. Crim. 568, 204 S.W. 657 (1918), ill will and bad feelings towards the decedent sheds light upon the appellant's intent at the time. *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998).